JAMES H. BRAND *vs.* STERLING MOTOR CAR COMPANY.

Plymouth.    October 16, 1922. — December 18, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Contract,* Performance and breach, Contractor.    *Agency,* Compensation of agent. *Broker.*

A corporation, engaged in the manufacture of munitions, which previously had had dealings, relating to munition contracts, with a man, who during the World War was engaged in obtaining and subletting contracts for war material, proposed to him by letter in 1916 that for the stated "consideration of services rendered and to be rendered in securing contracts" from a certain company, it agreed to pay him $8,000 because of a contract then existing with that company after payments thereunder were received, and a commission of eight mills for each shell manufactured on "any further contracts for machining shells." At the trial of an action by the man against the corporation for breach of the contract, no question arose except as to whether the plaintiff was entitled to compensation for any services rendered after the letter was written. There was detailed evidence as to services rendered by the plaintiff in an effort to procure further contracts for the defendant with the named company. Contracts were procured in May and August, 1917. In cross-examination, the plaintiff testified that he "assisted" in securing the new contracts, "but he alone did not secure them; he was one of the causes, but not the cause, of the defendant's obtaining them." There was a verdict for the plaintiff, and the defendant alleged exceptions. *Held,* that

(1) An absence of the plaintiff in San Francisco for three months from July to September, 1917, in the circumstances did not require a finding for the defendant as a matter of law;

(2) A letter of the defendant to the plaintiff on February 8, 1917, directing the plaintiff to "discontinue any and all activities in reference to securing work for" the defendant, did not require as a matter of law a finding that the contract was cancelled, there also being evidence that, after the letter, the plaintiff's relations with the defendant did not cease and that there was no interruption in the friendliness between them nor change in what the plaintiff was doing;

(3) An instruction by the judge construing the contract as providing that the plaintiff was not entitled to recover unless his services were the "efficient cause" of the procurement of the contracts, was sufficiently favorable to the defendant;

(4) Under the provisions of the contract, an instruction by the judge, in substance permitting the jury to find that the plaintiff was the efficient cause of the procurement of the contracts in May and August, 1917, even though his connection therewith was limited to services relating to the contract being performed when the contract was made, was sufficiently favorable to the defendant;

(5) An illustrative application of the ruling that the plaintiff might be found to have been the efficient cause of procuring the second and third contracts by reason of his services in procuring the first, by comparing the situation to that of a broker who procured a purchaser of a house for the owner, which, later, was followed by a sale of another house by the owner to the same buyer without further intervention by the broker, and an instruction that the broker in such circumstances would have the burden of proving that he was the efficient cause of procuring the second sale, were not harmful error in the circumstances;

(6) An instruction that the letter of February 8, 1917, did not deprive the plaintiff of any rights he had acquired by reason of anything that he had done previous to its receipt, was correct;

(7) The defendant's exceptions were overruled.

The plaintiff above described made with the defendant in November, 1917, a contract in writing for the payment of a stipulated commission to the plaintiff "in consideration of and for services rendered and to be rendered in the assisting in securing a contract from the United States Government for One Pound Shells complete . . . also for the assisting in the financing of the order," the contract stipulating, "It is further agreed that you are to raise cash or establish a credit based on the size of the order," and, "It is understood that the credit to be raised by you [plaintiff] is the chief object of this agreement." An order was procured. The plaintiff negotiated for the required credit but the defendant did not furnish to a banker with whom the plaintiff negotiated an audited statement of its condition, which the banker required, and the plaintiff never established any credit with any bank or banker. Later, after investigation, the plaintiff advised the defendant that money to finance the undertaking could be obtained through the War Credits Board of the War Department, and the defendant finally obtained advances on its contracts from that source. A verdict was returned for the plaintiff and the defendant alleged exceptions. *Held,* that

(1) Since the contract contained no provision requiring the defendant to assist the plaintiff in obtaining the required credit by furnishing a statement of its condition, an instruction by the judge which permitted the jury to find for the plaintiff if they were satisfied that the plaintiff did all he reasonably could to obtain the credit and was prevented from obtaining it because the defendant did not furnish the audited statement of its condition asked for, was erroneous;

(2) The defendant's exceptions were sustained.

CONTRACT, with a declaration in twelve counts (only the first and the fifth of which now are material), alleging breaches by the defendant of contracts under the provisions of which the plaintiff was to be paid certain sums by reason of services rendered by him relating to certain contracts, procured for the defendant, for the manufacture of munitions. Writ dated September 9, 1919.

The contract which formed the basis of the first count was as follows:

"Brockton, Mass. October 5, 1916. Mr. James H. Brand,

2 Rector Street, New York.  Dear Sir: — In consideration of services rendered and to be rendered in securing contracts from the Poole Engineering Machine Co. of Baltimore, Md. we agree to pay you as follows: for the contract to machine One Million Shells the sum of Eight Thousand Dollars ($8,000) payable at the rate of Eight Mills per shell .008 when payments are received from Poole Engineering Machine Co.  On any further contracts for machining shells a commission of .008 payable as herein stated.  (Signed) Sterling Motor Car Co., W. T. Marsh, Pres. (Seal) W. T. Marsh."

The contract which was the basis of the fifth count was as follows:

"Nov. 15, 1917.  Mr. James H. Brand, 12 West 44th Street, New York City.  Dear Sir:— It is hereby agreed between W. T. Marsh, representing the Sterling Motor Car Co. of Brockton, Mass. and yourself that in consideration of and for services rendered and to be rendered in the assisting of securing a contract from the United States Government for One Pound Shells complete . . . also for the assisting in the financing of the order, that the following commission is to be paid to you by the Sterling Motor Car Company, based on the size of the order as per: . . . It is further agreed that you are to raise cash or establish a credit based on the size of the order, as follows: . . . It is further agreed that the above commission is to be paid by the Sterling Motor Car Company to James H. Brand as and when the contract is signed and the cash delivered or credit established. . . . It is understood that the credit to be raised by you is the chief object of this agreement.  (Signed) Sterling Motor Car Co., W. R. Marsh, Prest.  Accepted:— James H. Brand."

In the Superior Court, the action was tried before *Fosdick,* J. The letter of February 8, 1917, from the defendant to the plaintiff, referred to in the opinion, was in reply to one from the plaintiff to the defendant of the previous day, which in part related to the state of account between the parties.  In it, Marsh, the defendant's president, wrote as follows:

"The reason that I asked you to have the Canadian Car & Foundry check sent along to me was because I was short of money and wanted to deposit their check.  There was no reason for your getting sore about the suggestion.  You know very

well from what I have told you from time to time that it has been a tough proposition on my part to finance this contract, and I have always strained a point to pay you the commissions as rapidly as possible, altho I think that the money has been very easily earned.

"I am very sorry indeed that our relations which have been so friendly are coming so close to the breaking point. Please cancel your efforts to dispose of the primers, and also discontinue any and all activities in reference to securing work for me. I am resolved in the future to secure my own work, or go without it."

Following this letter, the plaintiff on redirect-examination testified, his relations with Marsh did not cease and there was no interruption in the friendliness between them. There was no change in what the plaintiff was doing.

Other material evidence is described in the opinion. At the close of the evidence, the plaintiff waived counts 9–12, inclusive, and the defendant moved that a verdict be ordered in its favor on the other counts. The judge granted the motion as to all counts excepting the first, fourth and fifth.

The defendant asked for, and the judge refused to give, the following rulings:

"4. The defendant had the right, acting in good faith, to withdraw or to terminate the arrangement by which the plaintiff was to have a commission on further Poole contracts and if the defendant's letter of February 8, 1917, terminating the arrangement, was written in good faith and no new arrangement was made before the second and third Poole contracts were obtained, the plaintiff cannot recover with respect to them.

"5. Unless the plaintiff was reemployed, after February 8, 1917, to negotiate contracts with the Poole Company, he cannot recover on counts 1, 2, 3, or 4."

"9. The plaintiff cannot recover a commission under the contract of November 15, 1917, unless he was an efficient cause of the obtaining by the defendant of the contract with the United States Government for 2,000,000 shells."

Material portions of the charge to the jury were as follows:

"If the plaintiff was the efficient cause of bringing the Poole Company and the Sterling Company together, so that the result

of the negotiations between the Poole Company and the Sterling Company thereafter was the second contract and was the third contract between the Poole Company and the defendant, then you would be warranted in finding that he had proven that he was the efficient cause of bringing about those contracts, you would be warranted in finding he had secured those contracts, within the meaning of the document of October 5, 1916. He does not have to show you that he had immediate and continuous touch with both parties. He does not have to show you that he had in mind or had any part in arranging the details of the contracts between Poole and the defendant, to show you he was present at every interview between the representative of the Poole Engineering Company and the defendant. He does not have to show you that he took part in any of the negotiations between Marsh and the Poole people. If he brought Marsh, that is the Sterling Motor Car Company, and the Poole Engineering Company together so that they, after having been brought together, made a contract, that is all this plaintiff is called upon to do. If he was the efficient cause of bringing them together that is all he is obliged to show in order to show that he has hardened this offer of October 5th into a contract and if he has hardened that into a contract then he is entitled to a verdict for what he has earned and it is for you to say whether on the evidence he was the efficient cause of bringing the parties together. It is for you to say whether the parties got together not because of his doings but because of the excellent way in which the defendant handled the first Poole contract.

"And there I have got to spend a little time, I am sorry to say, because there is some contention there. The plaintiff contends he was the efficient cause of making those second and third Poole contracts. The defendant says, 'No, you were not. Those contracts were made by the Poole Engineering Company with us because we did so well on the shells that they wanted us to do it and you did not have any part in making the second or third Poole contracts.' That requires me to explain things to you a little in that connection. If the plaintiff and what he did were the efficient cause of the getting together of the Poole Engineering Company on the second contract with the defendant, and the getting together of the Poole Engineering Company

with the defendant on the third shell contract with the Poole Company, then if he has satisfied you of that by proof or rather by the fair preponderance of the evidence, then he would be entitled to a verdict. And you want to have in mind in considering that question whether there was anything necessary on the second Poole contract or anything necessary on the third Poole contract to bring those contracting parties together, whether there was anything necessary to be done by Brand in order to be the efficient cause of bringing them together for the second Poole contract or the third Poole contract or both. Take into consideration and use this as an illustration: Suppose you have successfully dealt with a broker, suppose you own three houses, gentlemen, any one of you; suppose you go to a broker and you say, 'I want to sell my three houses, and if you sell them for me I will give you a commission.' He replies, 'All right.' He goes out and he finds John Smith, and he says to John Smith, 'I want to sell you Mr. Jones' house down here,' and so they go down and John Smith says, or rather the would be purchaser says, 'That's a fine house, I'll buy it,' and the deal is carried through. Now the broker has brought to the seller the man that he sells to, and the trade has been carried through and there is no question about it and we will assume that the commission is paid to him, that is done, too. Now what is going to be the case later on? Having made the acquaintance of the purchaser through the broker the seller says, 'I guess I want to sell another house.' He goes to that buyer whom he knows now, having been introduced by the broker, he goes to him and he says, 'Will you buy my other house, I will sell it to you, the one that is right next to you.' And the buyer, knowing the seller, because he met him through the broker says, 'Why yes, I will talk it over with you,' and they do and the trade is carried through. Now there is a very pretty question there whether that broker who introduced them in the first place is entitled to a commission on the second sale, although he may not have had a finger in pie at all and the only thing he may have done, and I am assuming, for the purpose of illustration, that the only thing that he did was to bring the two people together months, perhaps years, before. I am going to tell you the law on a point like that. The broker always, when he sues in court, has the burden

of proving that he was the efficient cause of bringing about the sale. So you have to scrutinize a case like the one I have put to you and see whether the broker in that case, although he was undoubtedly a factor in bringing about the second sale, because he had originally, months or years before, introduced the parties, you would have to scrutinize the whole situation and say, 'Well, was the broker the efficient cause of bringing about the sale? Or was it that the seller wanted to leave town and so he looked up that fellow who had now become his neighbor and tried to sell the house himself? What was the state of affairs here, and what was the efficient cause of bringing about the sale of the second house?' If the broker is found to have been the efficient cause of bringing that sale about then he might be and would be entitled to a commission. If you should find that the Poole Engineering Company and the defendant were originally made known to each other by Brand and that he was the efficient cause of bringing about the million shell contract, the first one, then you have to look at all the circumstances in the case, look at the oral testimony and the written documents and find out whether on the second Poole contract for shells and the third Poole contract for shells, this plaintiff was the cause of bringing about or securing, as the wording is, those contracts. If he was the efficient cause of securing those contracts, then he is entitled to his commission. If he was not the efficient cause of securing those contracts, if those contracts were secured through some other efficient cause than the plaintiff's efforts, then he is not entitled to a verdict, and you should find a verdict for the defendant as to whichever of those two contracts you find he was not the efficient cause of. If he was the efficient cause of the second and not of the third you would find for him on the second and against him on the third contract. And if the other way around you would find for or against according as he was or was not the efficient cause of the second and third Poole contracts."

The record states the following exceptions to the charge:

"The defendant excepted to that part of the charge in which the jury were instructed that if the plaintiff was the efficient cause of bringing the parties together so that their negotiations resulted in the second and third Poole contracts he can recover

without having to show he was present at any interview, it being enough if he was the efficient cause of bringing them together. Defendant's counsel stated that he excepted to this part of the charge because at the time when the contract was made the parties had been brought together and were known to each other so that it obviously could not have been contemplated that the bringing of them together was a compliance by the broker with the requirements of the contract.

"The defendant excepted to the use of the illustration of the three houses, where the broker finds a customer for one, and his employer later sells a second house to the same purchaser; counsel stating that in order to apply to this case, the illustration should have assumed that when the contract was made the parties had been brought together and the customer had been found, and that in the case on trial obviously something different from the mere finding of the customer would be necessary in order to entitle the broker to a commission.

"The defendant also excepted to that part of the charge in which it was said that if the defendant and the Poole Company were brought together by the plaintiff he could be found to have been the efficient cause of the later contracts. The defendant excepted to its being left to the jury to find from the fact alone of the plaintiff's telephoning or communicating to the defendant the name of the Poole Company that the plaintiff was the efficient cause of the later contracts, it appearing that the defendant and the Poole Company had been doing business together before this so that it was not the usual case of bringing parties together who had never heard of each other.

"The defendant excepted to the instruction that if when the letter of February 8, 1917, was written, the plaintiff had already been the efficient cause of the later contracts, he could recover, the exception being based on the fact that there was no evidence for the jury on that point.

"The defendant further excepted to the instruction that if the plaintiff after February 8, 1917, in spite of the withdrawal of the employment or of the offer, became the efficient cause, he should be paid, as in the supposed case of the broker who had been employed to find a customer, without any agreement as to the amount of his commission or compensation.

"The defendant excepted to the jury's being permitted to find that the plaintiff was entitled to a commission under the fifth count by reason of his dealings with Spitzer, Rorick and Company.

"The defendant also excepted to the ruling that there was no evidence of any illegality of the contract of November 15 and that it was a legal contract."

In special findings, the jury found for the defendant on count 4. On count 1, they found for the plaintiff in the sum of $8,439.81, and on count 5 in the sum of $12,555, finding generally for the plaintiff in the sum of $20,994.81; and the defendant alleged exceptions.

*R. G. Dodge,* (*R. S. Wilkins* with him,) for the defendant.

*Lee M. Friedman,* (*F. J. Geogan* with him,) for the plaintiff.

JENNEY, J. In this action the plaintiff alleges that he is entitled to compensation for services rendered in securing from the Poole Engineering and Machine Company of Baltimore, Maryland (hereinafter called the Poole Company), contracts for work required in the manufacture of certain ammunition shells, and in and under an agreement with the defendant relating to a contract with the United States for the manufacture of such shells.

Count one of the declaration relates to services in securing contracts with the Poole Company and count five is founded on the agreement as to the contract with the United States. No other counts are directly involved.

During the World War the defendant was a manufacturer of munitions and the plaintiff was in the business of obtaining and subletting contracts for war material. The defendant, having had previous dealings with the plaintiff relating to munition contracts, on October 5, 1916, addressed to him a letter in which, for the stated "consideration of services rendered and to be rendered in securing contracts" from the Poole Company, it agreed to pay him $8,000 because of a contract then existing with that company after payments thereunder were received, and a commission of eight mills for each shell manufactured on "any further contracts for machining shells."

The plaintiff accepted this proposal and on the evidence a finding would have been justified if not required that for some time thereafter both the plaintiff and the defendant acted under

its terms in all matters relating to the business of the defendant with the Poole Company. No question arises except as to services rendered after the letter was written.

The defendant contended that the evidence did not warrant a finding for the plaintiff upon the first count and excepted to its submission to the jury. The following facts either were not in dispute or warrantably could have been found: The plaintiff had, prior to October 5, 1916, acted in the defendant's behalf · in relation to a contract with the Poole Company and had received a commission for so doing. While engaged in the defendant's behalf, he ascertained that the Poole Company, of which he had previously known, had a contract for shells with Russia; he communicated that fact to William T. Marsh, the defendant's president, who agreed to go to New York or Baltimore when notified by him. After meeting the plaintiff in New York, Marsh went to Baltimore and closed the first contract of the defendant with the Poole Company. After the letter to the defendant dated October 5, 1916, the plaintiff kept "in touch" with the defendant by letter, telegrams, and telephone, and from time to time advised Marsh, who acted in its behalf. He also on different occasions saw the manager, superintendent, and some other officers of the Poole Company about further contracts and interviewed the defendant's vice-president at his office for the purpose of discussing the possibility of such contracts and before the negotiations between the defendant and the Poole Company relating thereto had been concluded reported these interviews to Marsh. In so doing he acted with the knowledge and authority of the defendant. The defendant in May and August, 1917, entered into contracts with the Poole Company for machining shells. On cross-examination, the plaintiff testified that he knew that the Poole Company contemplated giving the defendant additional contracts and "assisted" in securing them; "but he alone did not secure them; he was one of the causes, but not the cause, of the defendant's obtaining them." At the request of the defendant the plaintiff also performed services relative to contracts other than those with the Poole Company. Although he was in San Francisco for about three months from July to September, 1917, this did not necessitate a finding that he had abandoned the contract or that his services were then required

or necessary. One of the "further contracts" was made before he went away. The letter of February 8, 1917, written to the plaintiff in behalf of the defendant, in which the plaintiff was directed to "discontinue any and all activities in reference to securing work for me [meaning Marsh, acting in behalf of the defendant]," did not cancel or attempt to cancel the agreement relating to the contract for compensation concerning the Poole contracts, nor release the defendant from liability thereunder.

The judge construed the letter of October 5, 1916, as providing that the plaintiff was not entitled to recover unless his services were the "efficient cause" of the procurement of the contracts, and defined the meaning of this term. This was sufficiently favorable to the defendant. So far as the record shows the plaintiff did not except to the construction adopted, and the jury found in his favor on the count based on the Poole contracts. The case is considered on this basis.

Under the instructions the jury, in the circumstances disclosed by the evidence, could find that the plaintiff was the efficient cause of the procurement of the future contracts even though his connection therewith was limited to services relating to the first contract. The judge said that if the plaintiff was the efficient cause in bringing the Poole Company and the defendant together so that the result of their negotiations was the second and third contracts, this was sufficient to justify a verdict for him. The language used considered in connection with the further instruction, that he did not have to show that he had any part in arranging the details of the contract or that he took part in any of the negotiations between the defendant and the Poole Company, is consistent only with this view.

While the case is close, we are of opinion that the instruction was sufficiently favorable to the defendant and that on the facts disclosed, notwithstanding the quoted testimony of the plaintiff, it was a question for the jury whether the original bringing together of the parties as herein described was an efficient cause of the future contracts. This result is supported by the letter of the defendant dated October 5, 1916, hereinbefore considered. The letter refers to the plaintiff's services as "rendered and to be rendered" in securing contracts as a consideration for the payments provided for in future as well as then existing con-

tracts. See *Tribe* v. *Taylor*, L. R. 1 C. P. 505. The illustration used was not harmful error in view of the conclusion here reached. The instruction that the letter of February 8, 1917, did not deprive the plaintiff of any rights he had acquired by reason of anything that he had done prior to its receipt, was correct.

The exceptions to the instructions to the jury relating to the first count are overruled; those which are to the refusal of the defendant's fourth and fifth requests for rulings are embraced in those already considered and are disposed of by what has been said.

The substantial parts of the agreement, relating to contracts with the United States, are as follows:

"Nov. 15, 1917.

Mr. James H. Brand,
12 West 44th Street,
New York City.

Dear Sir:—

It is hereby agreed between W. T. Marsh, representing the Sterling Motor Car Co. of Brockton, Mass. and yourself that in consideration of and for services rendered and to be rendered in the assisting of securing a contract from the United States Government for One Pound Shells complete . . . also for the assisting in the financing of the order, that the following commission is to be paid to you by the Sterling Motor Car Company, based on the size of the order as per: . . .

"It is further agreed that you are to raise cash or establish a credit based on the size of the order, as follows: . . .

"It is further agreed that the above commission is to be paid by the Sterling Motor Car Company to James H. Brand as and when the contract is signed and the cash delivered or credit established. . . .

"It is understood that the credit to be raised by you is the chief object of this agreement.

[Signed] Sterling Motor Car Co.,
W. R. Marsh, Prest.

Accepted:—
James H. Brand."

A contract with the United States was secured for the manufacture of two million shells which necessitated the establishment

of a credit of $200,000. To accomplish this the plaintiff saw Marsh in Brockton, the defendant's place of business, and "went to several Brockton banks. The plaintiff suggested that it would be much easier and better to take the matter up with New York banks where he knew the people" than in Boston, and the matter being left in his hands he saw Mr. Rorick of Spitzer, Rorick and Company, bankers, who had offices in New York and other large cities, Mr. Rorick being his personal friend. In January Marsh came to New York and in company with the plaintiff met this banker who asked for an audited statement of the defendant's condition, but Marsh did not promise to furnish it. In February he again came to New York and saw the plaintiff. The defendant did not furnish the requested statement and the plaintiff never established any credit with any bank or banker. Later the plaintiff advised Marsh that the best way to obtain credit was to take the matter up with the War Credits Board, of the War Department. See U. S. St. 1917, c. 79, § 5; 40 U. S. Sts. at Large, 383; Willoughby, Government Organization in War Time and After, 65. After a visit to Washington where he had made an investigation, the plaintiff wrote the defendant that the money could be arranged through that board. The defendant finally obtained advances on its contracts from that source.

It is not necessary to consider whether the evidence justified a finding that through the plaintiff's services the War Credits Board advanced the plaintiff on account of its contracts an amount equal at least to that required by the agreement of the plaintiff with the defendant to establish credit. That question is not raised.

As to these services the judge instructed the jury, without exception on the part of the plaintiff so far as the record shows, that the plaintiff could not recover for bringing about the loan or advance from the government even if he was the efficient cause of the procurement. That question is not considered. See *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5.

However, the fifth count was submitted to the jury with the instruction that the plaintiff had to prove that he had raised cash or established a credit based on the size of the order; that if the defendant prevented him from carrying out the agreement with Spitzer, Rorick and Company by refusing to procure an

audited statement, and that if he did everything that was reasonably necessary to carry out his part of the contract, he could recover. In the course of the charge, he said: "If the plaintiff Brand did all that he reasonably could be expected to do to bring about the financing with Spitzer, Rorick and Company and obtaining the sum of $200,000, either by way of cash or credit and he was prevented from doing that by the omission on the part of the defendant and the refusal of the defendant to do something that was reasonably necessary to carry out that trade and their refusal and neglect was unreasonable under the circumstances, then he has done all he could and the law does not hold him to do impossibilities and he is entitled to recover for the result of the breach of the contract on the part of the defendant in not enabling him to carry out what he said he was going to carry out if they blocked by their unreasonable actions his carrying out a reasonable scheme with a party who was ready, able and willing to advance the money or to extend and establish the credit for the defendant, then he is entitled to his pay for his commissions because he is excused by their failure to do what reasonably must be expected of them in order to make it possible for him to carry out his part of this contract. Before you find in his favor on the whole matter you must find he also assisted in procuring the government order for two million shells."

The only exceptions relating to this which are now argued are to the failure to direct a verdict on this count for the defendant and to the "jury's being permitted to find that the plaintiff was entitled to a commission under the fifth count by reason of his dealings with Spitzer, Rorick and Co."

These exceptions must be sustained. The contract, although it recited that it was in part in consideration of assistance in financing the contract with the government, expressly provided that the plaintiff was to "raise cash or establish a credit" and that this was "the chief object of this agreement." It did not contain any provision requiring the defendant to assist in so doing by furnishing a statement of its business or financial condition. There was no evidence of any wrongful act or misrepresentation on the defendant's part, but simply the omission to supply an audited statement of condition. The jury were allowed to find for the plaintiff, if he did "all that he reasonably could be

expected to do to bring about the financing with Spitzer, Rorick and Company," and was prevented from so doing by the failure of the defendant to furnish the statement, which failure under the instructions to the jury could have been found to be unreasonable. The defendant did not agree expressly or by implication that it could or would furnish such a statement, and inasmuch as the willingness of the proposed lender was based on something which he had no right to require and the defendant was not bound to furnish, the plaintiff neither raised the cash nor established a credit, nor was prevented from so doing by the defendant. The instructions given were incorrect as the evidence did not justify the submission of this count to the jury on the ground of liability adopted by the judge. See *Robinson* v. *Van Auken,* 190 Mass. 161; *Caston* v. *Quimby,* 178 Mass. 153.

*Exceptions relating to count 1 overruled.*

*Exceptions relating to count 5 sustained.*