JAMES H. BRAND *vs.* STERLING MOTOR CAR COMPANY.

Plymouth.    March 18, 1924. — May 23, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Contract*, Construction, Performance and breach, Effect of custom.   *Custom.   Agency*, Commission.

At the trial of an action against a corporation upon a contract in writing whereby the plaintiff was to be paid a commission for obtaining a contract between the federal government and the defendant for the manufacture of shells and for the raising of cash or the establishing of credit based on the size of the order, it appeared that the contract was procured but that the cash was not raised nor was the credit established.   The contract provided, " It is understood that the credit to be raised by you [the plaintiff] is the chief object to this agreement."   The failure of the plaintiff to establish a credit was due to a failure of the defendant to furnish to a prospective lender a satisfactory audited statement. The plaintiff offered to prove a " custom in the banking business for the lender to require and for the borrower to furnish audited statements where applications are made for loans from outside banking houses or banks."   The evidence was excluded.   *Held*, that the evidence properly was excluded as there could not be read into the contract a custom which imposed on the defendant an obligation which it did not expressly nor impliedly assume.

At the trial of the action above described, there was evidence that, after all his efforts to establish a credit had failed, the plaintiff, as the vice-president of the defendant and not at all on a commission basis, interviewed the federal War Credits Board and, after negotiations, procured the necessary credit, fully understanding " that the government required that every dollar of the money advanced by it to a contractor on an advance payment like this had to be applied to the purposes of the contract."   The jury found for the plaintiff.   *Held*, that the procuring of such a credit could not be found to be a fulfillment of the requirements of the contract of the plaintiff, and that a verdict for the defendant should have been ordered.

CONTRACT, with a declaration in twelve counts alleging breaches by the defendant of contracts under the provisions of which the plaintiff was to be paid certain sums by reason of services rendered by him relating to contracts for the manufacture of munitions, procured by him for the defendant. Writ dated September 9, 1919.

The action previously was before this court after a trial before *Fosdick*, J., and is reported in 243 Mass. 303.   Evi-

dence at a second trial before *Macleod,* J., is described in the opinion.   At the close of the evidence, the defendant moved that a verdict be ordered in its favor on the fifth count. The motion was denied.   The defendant then asked for the following rulings:

" 4. Whatever the plaintiff may have done in connection with obtaining the advance from the War Credits Board, this did not amount to the raising of cash or establishing of a credit within the meaning of the contract.

" 5. The obtaining of an advance payment by the United States Government to assist in financing the contract was not a raising of cash or the establishing of a credit within the meaning of the contract sued on.

" 6. The plaintiff did not raise cash or establish a credit within the meaning of contract.

" 7. A contract to pay a commission to an agent or broker for obtaining an advance payment by the War Credits Board to a contractor would be illegal."

" 10. The furnishing of a bond with the American Surety Company as surety upon the terms upon which that company agreed to go on the bond would not have been in compliance with the contract under which the United States Government made an advance payment to the defendant."

The plaintiff asked for the following rulings:

" 13. Under the contract of November 15, the plaintiff performed his obligation with reference to securing cash or establishing credit, if he assisted in securing the cash or credit to be advanced by the United States Government or its departments.

" 14. Under the contract of November 15, the plaintiff performed his obligation if he assisted in the financing of the defendant, and it was not necessary that he should accomplish the raising of the money or the securing of the credit by his individual efforts solely.

" 15. All that the plaintiff was obliged to do under the contract of November 15, with reference to finances, was to assist in the financing for the defendant, and this contemplates that others besides himself should also work to accomplish the desired object.

" 16. If at the time the defendant terminated the employment of the plaintiff, the plaintiff had assisted in establishing a credit with the United States Government and its departments for a sum of $200,000 or more, and all that was required to be done to receive that sum of money was an act of the defendant and the defendant refused to perform that act but took another means of accomplishing the same end, it cannot by such refusal relieve itself from its obligation to pay the plaintiff under said contract."

" 24. If the jury find that it was an established custom in the banking business for banks or banking houses as lenders to require, and the borrower to furnish a statement of financial condition audited, or certified to, by accountants, ' audited statements ' so-called, when a loan was proposed then irrespective of any express agreement it was the duty of the defendant to furnish such 'audited statements' as were reasonably required under the trade custom when the defendant employed the plaintiff to procure the loan under its November 15 contract.

" 25. If the plaintiff failed to raise the money at Spitzer-Rorick and Company on account of the failure of the defendant to furnish statements or audits, which under the customs of the banking business were reasonably required, this would not bar the plaintiff from recovering under his contract.

" 26. Without any express agreement between the plaintiff and the defendant, if the defendant employed the plaintiff to raise money for it from banks or banking houses, then it was an implied term of the contract of employment that the defendant would do all those things in connection with the procuring the loan which the established customs of the banking business required a borrower to do as incidents of procuring such loans."

All of the above rulings were refused. There was a verdict for the plaintiff on the fifth count in the declaration in the sum of $14,457.60. The trial judge reported the action to this court for determination, judgment to be entered on the verdict if his rulings were right; otherwise such entry to be made as was proper.

*R. G. Dodge,* (*R. S. Wilkins* with him,) for the defendant.

*Lee M. Friedman,* (*F. J. Geogan* with him,) for the plaintiff.

BRALEY, J.   The declaration consisted of twelve counts. But only the first and fifth became material at the first trial when the plaintiff obtained a verdict for services alleged to have been rendered by him in the procurement for the defendant of contracts for the manufacture of munitions. The defendant's exceptions to the verdict on the first count, which rested on a contract between the parties dated October 5, 1916, were overruled, but its exceptions to the verdict on the fifth count were sustained, *Brand* v. *Sterling Motor Car Co.* 243 Mass. 303, and the case is before us on exceptions of the defendant taken at the second trial confined to this count, on which the plaintiff again obtained a verdict.

The rights of the parties under the fifth count rest on the contract of November 15, 1917, which reads:

" It is hereby agreed between W. T. Marsh, representing the Sterling Motor Car Co. of Brockton, Mass., and yourself that in consideration of and for services rendered and to be rendered in the assisting of securing a contract from the United States Government for One Pound Shells complete (sub-contracts for some of the parts to be allowed) also for the assisting in the financing of the order, that the following commission is to be paid to you by the Sterling Motor Car Company, based on the size of the order as per:

Order for 4,000,000 shells, commission to be .008 per shell.
    "    " 3,000,000    "        "        " .007 "  "
    "    " 2,000,000    "        "        " .006 "  "
    "    " 1,000,000    "        "        " .005 "  "

" It is further agreed that you are to raise cash or establish a credit based on the size of the order, as follows:

Order for 4,000,000 shells, maximum credit to be $400,000.
    "    " 3,000,000    "      "      "      " 300,000.
    "    " 2,000,000    "      "      "      " 200,000.
    "    " 1,000,000    "      "      "      " 100,000.

" It is further agreed that the above commission is to be paid by the Sterling Motor Car Company to James H. Brand as and when the contract is signed and the cash delivered or credit established.

" It is further agreed that the Sterling Motor Car Co. are to allow you Fifty Dollars (50.) per week for living expenses, should it become necessary for you to live in Boston and it is also agreed that you are to become Vice-President of the Sterling Motor Car Co. and are to devote such time as may be necessary to the interest of this company while the contract is in force.

" It is understood that the credit to be raised by you is the chief object to this agreement."

The construction of this contract was a matter of law for the court, and not a question of fact. It was admitted that the plaintiff, who was elected a vice-president of the company, assisted in procuring a contract which the defendant made with the United States for the manufacture of two million one pound shells, and, the contract having provided " that you are to raise cash or establish a credit based on the size of the order," the plaintiff contends, that he performed this part of the agreement by making arrangements for a loan with Spitzer, Rorick and Company, a firm of bankers, which failed of consummation because of the defendant's fault. But the trial court, upon the evidence admitted on this issue which in substance was the same as at the first trial, followed the previous decision, that the plaintiff could not recover and declined to submit this question to the jury. The ruling was right. The plaintiff testified that Rorick acting for the firm agreed, if the defendant " could furnish . . . a satisfactory audited statement and he was satisfied with the management of the company," the bankers would lend the defendant $200,000, the amount required to enable it to undertake the performance of the contract for munitions. It was admitted that the company did not promise to furnish any statement, and the evidence of the plaintiff did not warrant a finding, that on the negotiations as disclosed he had earned a commission. *Brand* v. *Sterling Motor Car Co.* 243 Mass. 303, 317.

The plaintiff, to avoid this result as well as the effect of the former decision, offered evidence of a " custom in the banking business for the lender to require and for the borrower to furnish audited statements where applications

are made for loans from outside banking houses or banks."
The evidence was excluded rightly. A custom could not
be read into the contract which imposed on the defendant
an obligation which it did not expressly or impliedly assume.
*Rosenbush* v. *Learned,* 242 Mass. 297, 301.

The remaining issue was, whether the $200,000 advanced
by the government to the company constituted either cash
or a credit obtained by the plaintiff in performance of his
contract. The contract is clear. Before the plaintiff could
recover the stipulated commission on the order, he engaged
to procure in cash or establish a credit for the company
based on the size of the order, and, the order having been
given for two million shells, the amount to be provided was
$200,000. By U. S. St. 1917, c. 79, § 5, 40 U. S. Sts. at Large,
383, a War Credit Board was established which could make
payments in advance to contractors making munitions for
the government. The defendant, upon compliance with
certain conditions required by the contract with the govern-
ment, finally obtained an advance payment from the board
of $200,000, and entered upon the performance of the con-
tract. The plaintiff claims that he is entitled to a commis-
sion for obtaining the payment, a question not raised at
the first trial. *Brand* v. *Sterling Motor Car Co.* 243 Mass.
303, 315.

The contract of the parties expressly provides, " It is
further agreed that you are to raise cash or establish a credit
on the size of the order, as follows: . . . for 2,000,000 shells,
maximum credit to be $200,000," and " It is understood that
the credit to be raised by you is the chief object of this agree-
ment." While the act of Congress was the law of the land,
the parties had no actual knowledge of it when they made
their contract. The plaintiff undertook to obtain the money
from banks or bankers, either by a direct loan to the defend-
ant of the entire amount, or by a system of credit on which
the defendant could draw when necessary. While the de-
fendant itself might have obtained the money, or the re-
quired financial assistance without the plaintiff's services
as a broker, yet if he performed his contract he could not be
deprived of his commission. It is true the jury could find that,

when all his various attempts to obtain money from outside sources had failed, he directed the defendant's attention to the War Credits Board as a possible means of financing the defendant's requirements, and exerted himself to secure an advance payment. The record however shows, that the board dealt with the contractors alone, and declined to negotiate with brokers. The sixth article of the contract with the government is explicit. " The contractor shall use the money advanced under this agreement solely in the direct performance of the Principal Agreement," which was the contract for the shells. It is manifest from the plaintiff's own evidence, that he knew of these conditions, and in his interviews with the board under the application made by the company for a loan he acted as vice-president. We quote from his testimony: " I went to see them purely as a representative and officer of the Sterling Motor Car Company." " And you didn't go there on a commission understanding? " " Not on a commission basis at all. It was simply as an officer working for the Sterling Motor Car Company." The plaintiff moreover " understood that the government required that every dollar of the money advanced by it to a contractor on an advance payment like this had to be applied to the purposes of the contract."

The salient facts were insufficient to warrant a finding that the plaintiff either raised $200,000 or established a credit for this amount on which the defendant could draw. And, not having performed his contract, he had failed to earn a commission, and his employment as originally contemplated by the parties was ended. *Fitzpatrick* v. *Gilson,* 176 Mass. 477, 478. *French* v. *McKay,* 181 Mass. 485, 486. *Smith* v. *Kimball,* 193 Mass. 582. *Bowes* v. *Henry,* 228 Mass. 341.

The motion for a directed verdict on the fifth count should have been granted and in accordance with the terms of the report the entry must be

*Judgment for the defendant on the fifth count.*