FACTORY REALTY CORPORATION *vs.* CORBIN-HOLMES SHOE CO.

Middlesex. May 6, 1942. — October 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Contract,* Cancellation, Construction. *Landlord and Tenant,* Cancellation of lease, Repairs. *Damages,* For breach of contract, Liquidated. *Words,* "Liquidated damages."

Cancellation of a lease of premises in accordance with terms stated therein did not relieve the lessee from liability for his previous breach of a covenant in the lease requiring him to make repairs.

In a lease of certain real estate providing for its ultimate purchase according to a deferred payment plan, a further provision that the lessee at his election might cancel the lease by a notice to the lessor and by retransfer of certain capital stock and by waiving "all claims to . . . [certain] prior payments made to the" lessor, "by way of liquidated damages," merely established the terms upon which the lessee, in electing to cancel, was to be absolved from future liability under the lease, and had no application to and did not relieve him from liability for past breaches of a covenant by him to repair.

CONTRACT. Writ in the Superior Court dated November 24, 1937.

The case was heard by *Hurley,* J., who found for the defendant. The plaintiff alleged exceptions.

*H. R. Bygrave,* for the plaintiff.

*F. X. Hurley,* for the defendant.

DOLAN, J. This is an action of contract to recover damages for the alleged breach of a covenant by the defendant contained in an instrument under seal which was executed by the parties. The case was referred to an auditor to determine the damages "in the event there should be liability."

Material facts found by the auditor follow. On June 29, 1928, the parties executed the instrument in question which, in substance, provided for the lease and ultimate purchase of a factory building by the defendant from the plaintiff on a deferred payment plan, with the privilege of cancellation of the contract by the defendant, at a certain time or times, on certain terms.

Pertinent provisions of the contract read as follows: "The party of the first part agrees to lease and grant and does hereby lease and grant to the party of the second part the right to use and occupy the aforesaid premises for a period of twenty (20) years from the date hereof upon the following terms and conditions, to-wit: The party of the second part agrees to purchase fifty (50) shares of the common capital stock, par value $100 each, of the party of the first part (one-fourth of the stock to be issued) and to pay therefor the sum of Five Thousand Dollars ($5,000.00) (one-fourth of the money raised by the issue of stock). The party of the second part agrees to pay a sum equal to the amount of all taxes, water rates, sewer rates and insurance premiums, including herein fire, public liability and boiler insurance, upon the leased premises paid by the party of the first part during the term of this lease. The party of the second part also agrees to pay the sum of $3,000.00 per annum for the first five years (this being 6% on the initial investment of $50,000.00 by the party of the first part — $20,000.00 by capital stock and $30,000.00 by a first mortgage). At the expiration of the first five years the amount payable as rent shall be refigured to equal 6% on the unamortized balance of the investment of the party of the first part at that time and such rent shall continue thereafter. During the entire term of this lease any balance of rent payment over and above 6% on the unamortized balance of the investment of the party of the first part at the time of such payment shall be credited to the amortization fund. The party of the second part also agrees to pay during each of the first five years the sum of $3,000.00 toward amortization to which shall be added any excess of payments of rent as above provided. Thereafter the

amount due as amortization shall be $2,000.00 per annum (plus excess of rent). The party of the first part agrees that it will within twenty days of the receipt of any sums in excess of $500.00 toward the amortization fund apply the same toward the reduction of any mortgage on the leased premises. The party of the first part shall at all times upon request inform the party of the second part of the status of the mortgage on the premises, and except for the initial mortgage of $30,000.00 and renewals of the unpaid balance thereof the party of the first part shall not encumber or permit any encumbrance on the premises. At the end of the first five (5) years or at the end of any year thereafter the party of the second part, upon ninety (90) days' notice in writing to the party of the first part, shall have the right to cancel this indenture by surrendering and transferring the capital stock of said Factory Realty Corporation held by it to the party of the first part and by waiving all claims to all prior payments made to the party of the first part for the amortization of said principal invested sum or for other purposes, by way of liquidated damages; and for the cancellation of this lease the party of the second part does hereby appoint and constitute the party of the first part its irrevocable attorney for the purpose of transferring said stock."

After the execution of the contract the defendant took possession of the premises and continued to occupy them until on or about June 29, 1937, when it "moved out in accordance with a notice of termination pursuant to the agreement." The defendant had failed to perform the covenant to make and pay for all repairs that were necessary to preserve the premises and permitted them to deteriorate physically in many respects, set forth by the auditor, which need not be narrated here. On one interpretation of the covenant involved the auditor found that the damages thus sustained by the plaintiff amounted to $5,063.74, with interest from June 29, 1937, and, in the alternative, that if the standard he adopted in determining the amount of damages was erroneous the plaintiff was not entitled to recover.

The case was heard by the judge upon the auditor's report and other evidence, and at the close of the evidence the plaintiff made the following requests for rulings: "1. The cancellation of the Agreement dated June 29, 1928, by the defendant, and its surrender and transfer of fifty (50) shares of the plaintiff's capital stock, did not relieve the defendant of the obligation to pay damages to the plaintiff for its failure to carry out the provision in said agreement for the defendant 'to make and to pay for all repairs . . . which shall be necessary properly to preserve said premises' as described in said Agreement, up to the date of such cancellation.   2. The defendant having failed to make repairs necessary properly to preserve the premises described in the Agreement, the plaintiff is entitled to recover as damages a sum equal to the fair and reasonable cost of such repairs with interest from the effective date of cancellation of the Agreement."   These requests were refused by the judge, subject to the plaintiff's exceptions.   The defendant's requests for rulings were in substance that if the defendant duly exercised its right to cancel the indenture as of June 29, 1937, the action cannot lie for alleged breaches of the covenants contained therein; that the effect of the cancellation was to annul or cancel the obligations of both parties to the agreement or indenture and "to cause the covenants and stipulations therein contained to be as if they had not existed"; and that on all the evidence the finding should be for the defendant.   These rulings were given by the judge, who found for the defendant subject to the plaintiff's exceptions.

Neither of the parties has argued that the auditor did not adopt the correct standard in determining that, by the failure of the defendant to carry out fully the agreement with reference to making repairs, the resultant damage was in the amount of $5,063.74.   The only issues argued before us are as to the liability of the defendant therefor as matter of law.   It is conceded by the plaintiff that the defendant seasonably exercised its right to cancel the agreement in question as of June 29, 1937, and surrendered to the plaintiff the fifty shares of its capital stock.

The defendant's contentions are (1) that when an agreement has been cancelled no action lies to enforce it, and (2) that the agreement contained a provision for liquidated damages for the defendant's right to cancel the agreement which it has satisfied. The plaintiff, on the other hand, argues that the exercise of the cancellation clause by the defendant did not relieve it from liability for its prior breach of the care and repair clause, either by way of cancellation or "by way of liquidated damages," and that the plaintiff's exceptions should be sustained.

We are of opinion that the judge erred in granting the defendant's requests for rulings that the cancellation of the agreement put an end to all the covenants and liabilities thereunder as though the covenants never had existed. We think that there is no such inflexible rule of law in this Commonwealth. The present case is governed in principle by such cases as *Paul* v. *Chickering,* 117 Mass. 265, *Sargent* v. *Pray,* 117 Mass. 267, *Richardson* v. *Gordon,* 188 Mass. 279, *Brand* v. *Sterling Motor Car Co.* 243 Mass. 303, *Welch* v. *Gordon,* 284 Mass. 485, *Globe Paper Co. Inc.* v. *Russell Box Co.* 291 Mass. 1, *Shea* v. *Aetna Life Ins. Co.* 292 Mass. 575. In the *Paul, Sargent, Richardson* and *Welch* cases, where a lessee had covenanted to pay all taxes assessed against the leased premises during the term, and the lessor or the lessee subsequently exercised a right reserved in the lease to terminate the leasehold, it was held that the lessee was liable to the lessor for taxes assessed before the termination of the lease, though not for those assessed thereafter. In the *Brand* and *Globe Paper Company* cases, where one had been engaged as agent to procure contracts for his principal under an employment of indefinite duration, terminable at the will of either party, the agent to receive a commission on each unit of goods sold by the principal under contracts procured by the agent, it was held that the principal remained liable for the commission on all goods sold under contracts procured by the agent while the agency was in effect, even though the principal thereafter terminated the contract of employment. And in the *Shea* case it was held that an employer who had procured life and

disability insurance for his employees who chose to partici-
pate, the policy giving the employer the right to cancel it
as to any employee who ceased to be employed or fell into
arrears in his premium contributions, could not by cancel-
ling a policy free the insurer from its liability to pay bene-
fits to an employee who had become disabled before the
policy was cancelled.  It would seem to be established that
there is no rule of law in this Commonwealth such as that
contended for by the defendant.  See *Hall* v. *Crowley*, 5
Allen, 304, 306; *Phaneuf* v. *Corey*, 190 Mass. 237; *Maklet-
zova* v. *Diaghileff*, 227 Mass. 100.  It is true, however, that
in a few cases statements may be found such as in *Newbury*
v. *Bay State Screw Co.* 7 Allen, 257, 260, 261, where it is
said: "Nothing can be plainer, as elementary law, than
that when an agreement has been annulled no action lies
to enforce it."  The defendant has relied largely upon that
case and also upon *Rogers* v. *Rogers & Brothers*, 139 Mass.
440, and *Fitzgerald* v. *Allen*, 128 Mass. 232.  In the *New-
bury* case the statement just quoted was not necessary to
the result there reached, except as it be interpreted to mean
that on the particular facts there involved an action on the
original contract, which had been annulled, would not lie.
In that case there was no provision in the original contract
for its cancellation, and the subsequent agreement that it
be cancelled was upon definite fixed terms.  In the *Rogers*
case the construction by the court as to the intent of the
parties was the determining factor.  In the *Fitzgerald* case
there was a provision for cancellation of the contract, but
none as to its effect, and recovery was allowed in quantum
meruit for materials and labor furnished by the plaintiff in
pursuance of the contract before it was cancelled.  None
of these cases is authority for an inflexible rule such as that
asserted to be the law by the defendant.

In the instant case the covenant in question bound the
defendant "to take good care of the leased premises" and
"to make and to pay for all repairs in and about the same
which shall be necessary properly to preserve said premises
. . . ."  It seems clear that this covenant was inserted to
protect the plaintiff in case the defendant should exercise

the right reserved to it in the indenture to terminate the agreement. Manifestly, if the defendant saw fit not to do so and purchased the premises at the end of the twenty years in accordance with the agreement, the plaintiff would not be concerned with the condition of the premises, and the covenant in question would be meaningless if interpreted in accordance with the contentions of the defendant.

It is necessary however to consider the effect of the "liquidated damages" clause in the indenture to determine whether, upon cancellation of the agreement, there was to be no liability on the part of the defendant beyond that stipulated in that clause.

Despite the use of the words "liquidated damages" in the clause under discussion, we are of opinion that it is not in substance or effect a "liquidated damages" clause. "Liquidated damages . . . is a sum fixed as an estimate made by the parties at the time when the contract is entered into, of the extent of the injury which a breach of the contract will cause." 3 Williston, Contracts (Rev. ed.) § 776. In the present case it seems plain that the provisions of the contract relative to cancellation had no relation to damages in the event of a breach of the contract by the defendant. The cancellation of the agreement was not a breach of the contract by the defendant, but rather was the exercise of a right reserved to the defendant in accordance with its terms. The clause in question was in effect an offer upon terms to cancel, which the defendant has accepted. We have already pointed out that there is nothing inherent in agreements for cancellation that requires that all accrued liability under the cancelled contract be put to an end. The contract was an alternative one, whereby the defendant was given an option either to perform or to cancel after a fixed period and to meet certain conditions, that is, the transfer to the plaintiff of the fifty shares of its stock and the forfeiture of the payments made to the plaintiff prior to cancellation. In *Smith* v. *Bergengren*, 153 Mass. 236, a physician sold his practice and covenanted never to practice in the same city again while the purchaser was engaged in the practice of medicine there, providing, however, that he should have

the right so to do at any time after five years upon payment to the purchaser of $2,000. At page 237 the court said: "This sum of two thousand dollars was not liquidated damages . . . . It was not a sum to be paid in case the defendant broke his contract, and did what he had agreed not to do. It was a price fixed for what the contract permitted him to do if he paid." See *Eaton* v. *Simcovitz*, 239 Mass. 569; *Edward G. Acker, Inc.* v. *Rittenberg*, 255 Mass. 599.

We think that the liquidated damages clause in question, properly interpreted, has no relation to or effect upon the covenant in the agreement, for the breach of which the plaintiff seeks to recover. It merely fixed the price that the defendant was to pay if it exercised its option to cancel, and, reading the instrument in question as a whole, we think that the liquidated damages clause was intended only to provide for the terms and conditions upon which the defendant was to be absolved at its election from future liability under the agreement, and not to relieve it from liability for breaches prior to cancellation. To hold otherwise would be, in effect, to hold that the defendant upon cancellation of the agreement would also be absolved, for example, from the obligation to pay taxes accrued before cancellation in violation of its covenant so to do, and contrary to the decisions of this court to which reference has already been made.

There is nothing in *Leary* v. *Laflin*, 101 Mass. 334, *Garst* v. *Harris*, 177 Mass. 72, *Guerin* v. *Stacy*, 175 Mass. 595, and *Kaplan* v. *Gray*, 215 Mass. 269, relied upon by the defendant, in conflict with what we have said here. These cases merely concern the question whether a so called liquidation clause was such in fact or was an unenforceable penalty, and do no more than to lay down the sound proposition that wherever possible the courts will hold the parties to the language they use, and, if a contract plainly provides for liquidated damages, will hold the parties to their word and not allow one of them to escape by calling the provisions a penalty. We have already pointed out that in the instant case we think that the so

called liquidation clause was not such as to relieve the defendant of its obligations upon the independent covenant upon which the present action is based.

In the determination of the present case we have excluded from consideration certain letters, written by the defendant's president while negotiations were being had for the lease and purchase of the property but before the execution of the contract, which were admitted by the auditor subject to the defendant's exceptions. Without intimating that these exceptions are properly before us, it may be observed that in any event their admission in evidence was not prejudicial error, since without them the result here reached as to the proper interpretation of the contract would be the same.

It follows that the plaintiff's exceptions must be sustained and judgment entered for the plaintiff in the amount of $5,063.74, with interest from June 29, 1937.

*So ordered.*