*Southern District*

### HAROLD I. FRUITMAN
#### v.
### JOSEPH DIAMOND,
### ROBERT H. APPLETON,
### CHARLOTTE APPLETON

*Cox, J.* By this action of contract the plaintiff seeks to recover an earned premium for workman's compensation insurance and a premium for personal liability insurance totaling $173.71. There is no dispute that the premiums are owed the plaintiff. The dispute is whether the debt is that of the defendant Diamond as contractor or of the defendants Appleton as owners. The defendants were properly included in this action. G. L. c. 231, §4A, (St. 1943, 350, §1;

St. 1947, 408). The trial judge found against the defendants Appleton. He denied seven of nine requests for rulings of law by the Appletons who, claiming to be agrieved thereby, requested the present report.

By an agreement dated January 3, 1950 Diamond undertook to build a residence for the Appletons for the sum of $15,000. That agreement and the specifications which are a part of it are comprehensive, detailed and specific. It was Diamond's contention that by reason of certain changes in the contract Diamond became a "supervisor of construction" for the Appletons and as such was paid $100.00 a week. The changes related to the size of the house, the dimensions as originally planned being too large for the lot of land; the enlargement of the living room by the partial use of the area designed as a porch, with a corresponding enlargement of the cellar under it; and the conversion of the remaining porch area into a dining room. There also seems to have been a change in the design of the roof.

It does not appear to be in dispute that the changes were made and that the price would increase because of the changes, but to what extent does not appear. It was not in dispute that Robert Appleton paid for materials, paid sub-contractors and workmen in accordance with bills incurred by Diamond and schedules of hours of labor submitted by Diamond to Appleton. The dispute arises over Diamond's contention that there was a substitution of his role of contractor for that of supervisor for or agent of the Appletons and that as principals the Appletons became liable for the insurance bills which the Appletons refused to pay. Appleton's explanation of the arrangement was Diamond's uncertain credit.

In finding for Diamond and against the Appletons, the judge noted that from the start "the contract was observed more by change than the following of it; the porch became a dining room; the hip roof was changed, etc., etc." The judge found that

Appleton "substituted a variance of the contract. He paid the defendant $100.00 per week, and paid for the materials and sub-contractors on the Defendant's order". The judge concluded that the workmen's compensation insurance ,'was ti protect the workmen employed in the building of Appleton's house, and that Appleton and wife are liable for $173.71."

It is clear that the judge based his decision on the position taken by Diamond that a new and verbal agreement was substituted for the original one, and that as a consequence, Diamond became the agent of the Appletons in the construction of the house.

The important issue, therefore, is whether Diamond contracted for the workmen's compensation insurance as agent of the Appletons under a substituted agreement. See *Mass. N.E. St. R'y. v. Plum Is. &c. Co..* 255 Mass. '04, 109, 110.

Without setting forth all those requests by the defendants Appleton for rulings of law which were denied by the judge, it is enough to say that they present the other side of the question, to wit, that the original contract remained in effect, except as modified, and that Diamond was not the agent of the Appletons when he contracted for the workmen's compensation insurance.

The policy of workmen's compensation insurance was issued to the defendant Joseph Diamond as the insured and as the employer of workmen. The personal liability policy was also issued to Diamond as the insured. The policies were dated January 30, 1951 and the premiums were billed to Diamond. No bill was ever sent by the plaintiff to the Appletons. The Appletons had no dealings with the plaintiff.

That the written contract of January 3, 1950 between Diamond as contractor and the Appletons as owners was waived and a new relation of principals and agent created between the parties was an affirmative defense the burden of proving which rested upon Diamond who asserted it. *Bangs v. Farr,* 209

Mass. 339. *Martiniello v. Bamel,* 255 Mass. 25. *Mass. N.E. St. R'y. v. Plum Is. & c. Co.* 255 Mass 104. That burden was not sustained by Diamond. An examination of the evidence, all the material portions of which are said to have been reported, discloses only that there were changes in the contract and, except as changed, the contract remained in force. *Factory R'lty Corp. v. Corbin-Holmes Shoe Co.,* 312 Mass. 325. It therefore becomes necessary to look to the original contract. The contract specifically provided with reference to insurance, so far as material, as follows:

> "INSURANCE: Public liability and workmen's compensation insurance shall be carried by each contractor so as to protect the owner from any liability for any injuries that may be sustained in connection with this work. . ."

The structural changes did not abrogate the original formal contract. It was subjected to change and not to extinction. Neither did the fact that the Appletons paid all the bills which were contracted and billed to Diamond nor the payment of $100.00 a week to Diamond cancel the original contract and substitute another. Article 4 of the original contract required that

> "The owner [the Appletons] shall make payments on account of the Contract as provided therein, as follows:

> "On each and every Friday a sum of money equivalent to the amount to be paid for wages by the Contractor for that week and upon the presentation of the invoices for materials to be used in the construction of the house and garage the sum necessary to pay for the materials, furnished, as evidenced by said invoices, and the sum of $          for the value of the services of the Contractor, and additional sums equal to the money due to Sub-contractors."

The amount of dollars payable to the Contractor Diamond was left out of Article 4. But the

payment of bills by the Appletons was in strict accordance with the original contract and the payment of $100 weekly to Diamond was satisfactory to both apparently from the very outset as if it had been originally written in. None of those considerations justify a conclusion that the original contract was cancelled in favor of what is now alleged to be a verbal one. We can find no reported evidence to support such a conclusion.

There is no doubt in law that if Diamond became the agent of the Appletons that the Appletons could be held liable as principals for the insurance for their benefit, as the judge held, even though Diamond had also made himself personally liable under the insurance contract. *Norfolk County Trust Co. v. Green,* 304 Mass. 406, 409. See also *Seretto v. Schnell,* 247 Mass. 173; *Grice v. First National Stores, Inc.* 268 Mass. 210; *Whitney v. Nolan,* 296 Mass, 419; *Howell v. First of Boston International Corp.,* 309 Mass. 194. But as already stated the reported evidence did not warrant or support a finding that Diamond became the agent of the Appletons or either of them, therefore, the finding cannot stand. *Bangs v. Farr,* 209 Mass. 339, 344. The insurance premiums sued for are, under the contract, the clear responsibility of Diamond.

The findings of the judge against the defendants Appleton and for the defendant Diamond are vacated. The plaintiff is to have judgment against the defendant Joseph Diamond in the sum of $173.71 and the defendants Appleton are to have judgment in their favor.