R. F. BAKER COMPANY, INC. *v.* P. BALLANTINE & SONS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued February 4—decided May 8, 1941.

*Joseph Schwarz* and *A. D. Slavitt,* with whom was *Paul J. Grumbly,* for the appellant (plaintiff).

*Herbert L. Emanuelson,* for the appellee (defendant).

JENNINGS, J. The plaintiff had the exclusive agency for the products of the defendant in Danbury and vicinity from February to September, 1934. The agency was then revoked. Thereupon the plaintiff brought an action against the defendant, claiming damages for breach of contract in the second count and on a quantum meruit basis in the third. The first count was withdrawn. The jury rendered a general verdict for the plaintiff which the trial court set aside. The jury could reasonably have found the relationship between the parties to have been as follows, considering the evidence in its aspect most favorable to the plaintiff: Stanhope Healey was state distributor of the defendant's products. When beer became legal in 1933, the plaintiff sought the exclusive agency for those products for Danbury and vicinity. Healey and Baker, representing the plaintiff, had known each other well for many years. They started discussing the proposition late in 1933 and in January, 1934, made an oral arrangement that the defendant would supply the plaintiff with its products on demand and that the plaintiff was to have the exclusive agency for them within its territory. Shortly thereafter the arrangement was modified to give to the plaintiff the right to terminate it at will. The trial court and counsel for both parties have proceeded upon the theory that this was a valid modification, and we shall consider the case

upon the same basis. The plaintiff not only sold the products but spent considerable time, energy and money in introducing them to the trade. The agency was revoked by the defendant September 1, 1934. It pleaded various valid reasons for the revocation but the verdict for the plaintiff shows that these issues were found for the latter.

On these facts the trial court held as to the second count that the promise of the plaintiff was illusory, furnished no consideration for that of the defendant and rendered the agreement unenforcible as to its executory features; also that it was too uncertain in its terms to form the basis of a legal contract. The plaintiff claims that its exercise of the agency in accordance with its terms constituted adequate consideration and that the defendant was obliged to continue the agency until it was terminated by the plaintiff, or, for cause, by the defendant.

Many cases are cited by the plaintiff but it relies principally on our own case of *Gurfein* v. *Werbelovsky*, 97 Conn. 703, 118 Atl. 32. In that case the plaintiff ordered merchandise from the defendant to be shipped within three months and had the option to cancel the order at any time before shipment. The defendant failed to ship the order within the time specified though requested to do so by the plaintiff and the plaintiff brought suit. The defendant claimed that, since the plaintiff had the right of cancellation, there was no contract. This court held the test to be whether the contract was enforcible by the defendant. It held that it was and that shipment before cancellation by the plaintiff would have obligated the latter to pay. Professor Corbin has said of this case: "The contract was bilateral, creating a duty to pay as well as a duty to ship, each promise being the consideration for the other. The 'option to cancel' possessed by the buyer

meant that he had the legal power of extinguishing the mutual duties. This power would die instantly upon shipment by the defendant." 32 Yale L. J. 496. Here there was no obligation on the part of the plaintiff to take any of the defendant's products whatever. Failure to do so would doubtless have justified the cancellation of the agency for cause but would not have supported an action for damages. As was stated in the *Gurfein* case, supra, 705, quoting from *Ellis* v. *Dodge Bros.*, 237 Fed. 860, 867, "To agree to do something and reserve the right to cancel the agreement at will is no agreement at all." See also cases cited in the *Gurfein* case at p. 707 and *Best Co.* v. *Goldstein*, 124 Conn. 597, 602, 1 Atl. (2d) 140; 1 Williston, Contracts (Rev. Ed.) § 105; 34 Yale L. J. 571, 573; Restatement, 1 Contracts, § 79 (b, 1); 1 Page, Contracts (2d Ed.) § 572.

The element lacking in the cases cited by the plaintiff and present in those cited by the defendant and the case at bar is the unconditional right of the plaintiff to terminate the contract at will. There was no contract as far as executory dealings were concerned. The trial court correctly held that the verdict could not be sustained under the second count.

The memorandum of decision discloses that the verdict was set aside as to the third count, not for the usual reason that it was against the evidence and not for the reason occasionally invoked that there was error in some fundamental ruling or in the charge, but because the jury had failed to follow the rules of law laid down by the court. It is the duty of the trial court, having in mind its general control over the verdict, to do this where the violation of its instructions is clear. To take an extreme instance, if a verdict should be directed for a defendant and the jury, in spite of this, brought in a plaintiff's verdict, it would be the duty

of the court to set it aside. The correctness of the charge is not in issue or considered on this appeal.

Where the reason for setting aside a verdict is other than because it is against the evidence, a finding is necessary. General Statutes, Cum. Sup. 1935, § 1663c. In no other way can the matter be presented by the record and this is the practice. *Frisbie* v. *Schinto,* 120 Conn. 412, 181 Atl. 535; A-75 Conn. Supreme Court Records & Briefs, 443; Conn. App. Proc., § 116. From the finding it appears that the jury were instructed that damages under the third count were to be determined by taking the difference between the expenditures incurred by the plaintiff in carrying out its agency and the profits derived from the same source. If the profits exceeded the expenditures, the plaintiff was entitled to no damages under this count. If the profits were less than the expenditures, the plaintiff was entitled to the difference. Under the claims of proof, which are not questioned in this respect, the highest expenditures were $2250 and the lowest profits $3077. It follows that under the charge no damages whatever were shown, to say nothing of those reflected by the plaintiff's verdict for $3500. The trial court was also required to set aside the verdict if it be assumed that it was rendered under the third count.

As the case must be retried, we point out that the plaintiff could not recover the expenditures which it made in pursuance of the agency upon the basis of an implied contract. The plaintiff evidently looked for its compensation to the profits which would accrue to it from the sale of liquor supplied by the defendant; and it appears in Baker's own testimony that he talked to Healey about certain advertising he was doing and the latter stated that the defendant would not pay for that. There were lacking the elements necessary to

give rise to an implied contract, that services were rendered by the plaintiff in the expectation that the defendant would pay for them and were accepted by the defendant with knowledge of that expectation. *Collins* v. *Lewis*, 111 Conn. 299, 304, 149 Atl. 668; *Kearns* v. *Andree*, 107 Conn. 181, 187, 139 Atl. 695. The only basis for recovery would be on the ground that the plaintiff, mistakenly believing that it was acting under a contract which could be terminated only at its will, performed services from which, after the termination of the agency, benefit accrued to the defendant. *Blasig* v. *Blasig*, 123 Conn. 686, 687, 195 Atl. 195; *Schleicher* v. *Schleicher*, 120 Conn. 528, 533, 182 Atl. 162. Upon this record we are not prepared to determine whether there could be a recovery upon this ground; but if there could be, it would be founded upon the fact that the plaintiff had built up a good will for the defendant's products and in such a situation his measure of recovery would be the value of the benefit to the defendant after the termination of the agency, not exceeding, of course, the amount of the expenditures which he had made in creating that good will. *Blasig* v. *Blasig*, supra; *Schleicher* v. *Schleicher*, supra.

There is no error.

In this opinion the other judges concurred.