JOSEPH ROSENBLATT *v.* GERTRUDE J. BERMAN ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and MELLITZ, Js.

32

Argued October 11—decided November 29, 1955

Cyril Coleman, with whom were Edward R. Doyle and, on the brief, C. Duane Blinn, for the appellants (defendants).

*John W. Joy,* with whom, on the brief, were *Hyman Holtman* and *Milton W. Horwitz,* for the appellee (plaintiff).

BALDWIN, J. The plaintiff brought this action alleging that the defendants, Gertrude Berman and Louis Rundbaken, acting as real estate agents, had conspired to cheat and defraud him in the sale of real estate owned by him. The case was tried to the jury. The plaintiff had a verdict for $2112.24 which the trial court, upon the defendants' motion, refused to set aside. The defendants have appealed, assigning errors in the denial of their motion and in the court's charge. With respect to the former, they make the claim, among others, that the amount of the damages fixed by the jury was not supported by the evidence. The resolution of this issue is decisive of the appeal.

The plaintiff made the following claims of proof bearing upon damages. He owned a two-family house on South Woodbine Street in Hartford which was subject to a mortgage held by the Hartford-Connecticut Trust Company. Being in need of money, he told the defendants that he wanted to sell the house for $6750. They offered to find a customer, and at Mrs. Berman's direction the plaintiff went to the office of Apter and Nahum, attorneys in Hartford, where he executed in blank the documents necessary to accomplish a sale. Sometime later, Mrs. Berman told the plaintiff that she had a customer, and the plaintiff authorized a sale for $5750. On May 29, 1945, the property was transferred to Rundbaken and by him to Ray Rushlow. The plaintiff knew nothing of this transaction. In January, 1946, he gave a check to Julius Apter, of Apter and Nahum, upon Apter's request, for pay-

ment of a water bill of $21.90 in preparation for consummating a sale to Rushlow. The plaintiff never intended to sell his property to Rundbaken. He did not know of the details of the transaction until 1948. He received nothing from the defendants, who at all times purported to act as his agents on account of the sale. The plaintiff had great confidence in Mrs. Berman; he took her advice and did what she directed. After May 29, 1945, he did not collect any rents from the two tenants who occupied his house, and he paid nothing upon the mortgage held by the Hartford-Connecticut Trust Company on the property; he relied upon Mrs. Berman to do so. In 1946 he caused a search of the title to be made which disclosed deeds dated May 29, 1945, conveying the property first to Rundbaken and then to Rushlow, a mortgage from Rushlow to Rundbaken, and an assignment of this mortgage from Rundbaken to Mrs. Berman. Prior to May 29, 1945, the defendants, unknown to the plaintiff, had secured Rushlow as a prospective purchaser for $4750, of which $750 was to be paid in cash and the balance by a purchase money mortgage for approximately $4000. The plaintiff never received a check for $2161.27 which the defendants claimed they gave him when the property was conveyed on May 29, 1945. The defendants sold the property to themselves so that they could resell it to Rushlow for a profit of $1250, which they kept.

The defendants claimed to have proved the following facts: The defendant Gertrude Berman operated a real estate agency, and the defendant Rundbaken worked as a real estate salesman, sharing his commissions with her. In May, 1945, the plaintiff told Mrs. Berman that he was in need of cash and gave her an exclusive agency to sell his South Woodbine

Street property. She advertised it for sale and secured Rushlow as a prospective purchaser for $4750, payable $750 in cash and the balance by a purchase money mortgage for $4000. When this offer was communicated to the plaintiff, he stated that he did not wish to take a purchase money mortgage but wanted cash. Rushlow could not pay more than $750 in cash. The purchase money mortgage for $4000 could not be discounted because of the poor condition and location of the plaintiff's property. With the knowledge and approval of the plaintiff, a plan was devised to sell the property to Rundbaken as nominee for $3500, with funds to be supplied by Mrs. Berman from the estate of her minor daughter, for whom Mrs. Berman was guardian. Thereafter, the property was to be conveyed by Rundbaken to Rushlow for $4750, payable $750 in cash and the balance by the giving of a long term mortgage which would be assigned to Mrs. Berman as guardian. The plaintiff agreed to this plan. It was consummated on May 29, 1945. The plaintiff executed the necessary documents, which had been prepared previously in the office of Apter and Nahum. These included a deed to Rundbaken and a statement of adjustments which showed the payment of a mortgage for $1252.73 to the Hartford-Connecticut Trust Company, credits totaling $86 in favor of the buyer for taxes and water rates, and the payment of $2161.27 to the plaintiff. Attorney Apter gave the plaintiff a check for $2161.27, drawn on the Hartford National Bank, which was honored on June 1, 1945. On October 5, 1945, Attorney Apter advised the plaintiff by letter of an unpaid water bill for $21.90, covering a period prior to May 29, 1945, which had been overlooked and, it being understood that the adjustments were subject to subsequent correction, asked that the

plaintiff send a check for this amount drawn to Rushlow. After sending seven letters without result, Julius Apter met the plaintiff in the Hartford National Bank, where the plaintiff gave him the requested check. The defendants completed the transaction in a manner which enabled the plaintiff to receive cash in the amount of $2161.27 for property which he had purchased on January 7, 1944, for $2250 by paying $600 in cash and assuming a mortgage in the amount of $1650.

In the charge to the jury respecting damages, the court pointed to the claim of the plaintiff that he had not been paid the amount of $2161.27, which represented the balance due him from the sale to Rundbaken, and instructed them that if they found this to be true, they could award him that sum with interest. The court also charged that if the jury found that the plaintiff had authorized a sale for $5750 only, he could recover this sum less the amount of the mortgage to the Hartford-Connecticut Trust Company, $1252.73, and adjustments of $86; that is, he could recover $4411.27, with interest at 6 per cent from May 29, 1945. The court also charged that if the jury found that a sale for $4750 was permitted by the plaintiff, they could deduct the $1252.73 paid on the mortgage and the $86 for adjustments and bring in a verdict for $3411.27 with interest. The court charged, further, that if the jury found that the defendants were permitted to sell the plaintiff's property for $4750 less the amount of the mortgage and the adjustments, leaving a balance of $3411.27, and the plaintiff did receive $2161.27, with the result that Mrs. Berman obtained a mortgage worth approximately $1100 (actually $1250) more than she accounted for to the plaintiff, he would be entitled to that sum with interest at 6 per cent. If the jury had

followed any one of these specific instructions as to the measure of damages, they could not have arrived at a verdict in the amount which they returned.

Since no exception was taken to these instructions, they stated the law governing the case with respect to the damages which could be awarded. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 77, 111 A.2d 547, and cases cited. The jury were bound to follow the court's instructions and to bring in a verdict for the plaintiff consistent with them, or a verdict for the defendants. *R. F. Baker Co.* v. *P. Ballantine & Sons,* 127 Conn. 680, 684, 20 A.2d 82; *Uhl* v. *Maiorano,* 96 Conn. 683, 685, 115 A. 473; *Budovsky* v. *Hadhazi,* 95 Conn. 388, 398, 111 A. 179; see *O'Brien* v. *Connecticut Co.,* 97 Conn. 419, 422, 117 A. 498. We have examined the memorandum of decision upon the motion to set aside the verdict, as we can do for a better understanding of the court's decision. *Smith* v. *State,* 139 Conn. 249, 251, 93 A.2d 296; *Duggan* v. *Byrolly Transportation Co.,* 121 Conn. 372, 375, 185 A. 85. The court, with a commendable desire to avoid the necessity for a new trial, has attempted to rationalize the jury's decision. It has, however, made assumptions which are based upon conjectures as to the real basis of the verdict and the method used by the jury in computing interest. These assumptions are not supported by the claims of proof. Remittiturs should be ordered only when it is manifest that the jury have included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. *Adams* v. *New Haven,* 131 Conn. 552, 556, 41 A.2d 111; *Lucas* v. *South Norwalk Trust Co.,* 121 Conn. 201, 206, 184 A. 157; *Bushnell* v. *Bushnell,* 103 Conn. 583, 596, 131 A. 432; *New England Iron Works Co.* v. *Connecticut Co.,* 98 Conn. 609, 614, 120 A. 281; *Smith*

v. *Seitz*, 87 Conn. 678, 685, 89 A. 257; Maltbie, Conn. App. Proc., § 178; see *Faiman* v. *James D. Kauffman, Inc.,* 140 Conn. 395, 398, 100 A.2d 842.

We are aware that verdicts are often the result of compromise. Such a compromise, however, must fall within the limits of the court's instructions, given in the light of the claims of proof made by the parties. Otherwise, the litigants are deprived of their right to have the jurors determine the respective claims under the law as given to them by the court. *Stetson* v. *Stindt*, 279 F. 209, 211; *Larimer* v. *Platte*, 243 Iowa 1167, 1171, 53 N.W.2d 262; see *Haight* v. *Hoyt*, 50 Conn. 583, 584. The court should have retired the jury for a further consideration of their verdict, or, having accepted it, upon consideration of the defendant's motion should have set it aside. *R. F. Baker Co.* v. *P. Ballantine & Sons,* 127 Conn. 680, 683, 20 A.2d 82; General Statutes § 7972.

The plaintiffs rely upon *Ansonia Foundry Co.* v. *Bethlehem Steel Co.,* 98 Conn. 501, 507, 120 A. 307. We there subscribed to the proposition, as well-settled law, that a new trial will not be granted upon the complaint of a losing party that the verdict against him was inadequate and therefore unjust to the prevailing party, or was for less than the amount established by proof, or should have been for more or nothing. We held that the trial court erred in setting aside a verdict for the defendant on its counterclaim upon the plaintiff's claim that the damages of the defendant, if it was entitled to any, were so definitely liquidated by undisputed evidence that a verdict for a sum substantially less than the full amount necessarily showed that the jury must have found the issue whether the defendant was entitled to any damages at all in favor of the plaintiff. We pointed out (p. 508) that the record did not

show that the damages were necessarily liquidated in advance at a fixed sum or that the defendant was entitled in law to any particular amount of damages, and that the jury's failure to award the full amount did not demonstrate that the verdict was contrary to the law, even though it might be inadequate. The *Ansonia* case is clearly distinguishable from the case at bar on its facts.

Because the question of damages in the present case is so inextricably mixed with the question whether there was a conspiracy on the part of the defendants to cheat and defraud the plaintiff, the verdict must be set aside.

Two claims made by the defendants with respect to the court's charge should be considered briefly in prospect of another trial. The court charged, in effect, that the complaint sounded not only in tort but also in contract, and therefore if the jury found that the plaintiff did not receive the check for $2161.27 and allowed recovery for this sum, the six-year Statute of Limitations, General Statutes § 8315, applied. This was error. The complaint alleged a conspiracy to cheat and defraud the plaintiff. It sounded in tort. The applicable statute is § 8316, which limits the bringing of such an action to three years.

The defendants also claimed that the court erred in charging that the plaintiff could invoke the benefit of General Statutes § 8335 to meet their claim that the action was barred because it did not accrue within three years from the bringing of the complaint. General Statutes § 8335 provides that "[i]f any person, liable to an action by another, shall fraudulently conceal from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable

therefor at the time when the person entitled to sue thereon shall first discover its existence." The defendants pleaded in a special defense the three-year limitation imposed by General Statutes § 8316. Such a defense must be pleaded. Practice Book § 102. The plaintiff's reply was a general denial. Fraudulent concealment of the facts upon which the plaintiff could base his cause of action required an affirmative pleading in the reply. Section 8335 should have been pleaded specially. General Statutes § 7816; Practice Book § 102.

Because of the failure of the defendants to comply with Practice Book § 448, no costs should be taxed for the expense of printing the appendix. Practice Book § 452; *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 343, 114 A.2d 199.

There is error, the judgment is set aside and the case is remanded with direction to grant the motion to set the verdict aside.

In this opinion the other judges concurred.