STERN AND COMPANY, INC. *v.* INTERNATIONAL HARVESTER COMPANY

BALDWIN, C. J., KING, MURPHY, SHEA and RYAN, Js.

Argued June 6—decided July 5, 1961

*James W. Carpenter,* with whom was *William E. Glynn,* for the appellant (defendant).

*Irving S. Ribicoff,* with whom was *Louise H. Hunt,* for the appellee (plaintiff).

KING, J. Many of the material facts were outlined in the opinion on a previous appeal and need not be repeated here. See *Stern & Co. v. International Harvester Co.,* 146 Conn. 42, 43, 147 A.2d 490. For some time the parties had done business under a contract granting the plaintiff the exclusive distributorship of the defendant's refrigeration products throughout a wide territory which embraced all of Connecticut, most of Vermont and some of Massachusetts. The defendant was empowered to change the territory "by giving notice in writing . . . of such change." On a number of previous occasions it had made changes, sometimes increasing and sometimes decreasing the plaintiff's territory, but always giving written notice as called for in the contract. On or about October 6, 1953, the defendant again changed the territory by giving to another concern the distributorship for the counties of New London and Windham, in Connecticut; and on this occasion the defendant failed to give the plaintiff prior written notice of the change. Indeed, the plaintiff was given no notice at all and first learned of the change from its own salesmen in New London and Windham counties; they tele-

phoned that salesmen of another company were calling on the plaintiff's customers in those counties and were selling the defendant's refrigeration products.

The plaintiff brought this action to recover damages for injury to its business prestige, good will and sales, alleged to have been caused by the defendant's breach of contract. The contract contained a provision empowering either party to cancel the distributorship "without cause . . . by giving written notice to the other party, specifying the effective time of cancellation." On October 13, 1953, the plaintiff gave written notice to the defendant that, effective in thirty days, it canceled its distributorship for the entire remaining territory covered by the contract. The plaintiff asked the defendant to notify it as to what disposition the defendant wanted made of its products then on hand. The contract defined the rights and duties of the parties in settling accounts upon cancellation but contained no provision as to antecedent breaches of contract, though such breaches might motivate cancellation. The power in each party to cancel, upon giving written notice, did not, as the defendant seems to claim, result in the creation of an illusory contract, void for lack of any obligation on the part of either party. The contract remained operative until the power of cancellation was properly exercised. 1 Corbin, Contracts §§ 163, 167, 169. As to the portions of the contract which had been executed on the effective date of cancellation, the rights of the parties remained unaffected by the cancellation. Id. § 168; see *Gurfein* v. *Werbelovsky,* 97 Conn. 703, 706, 118 A. 32; *R. F. Baker Co.* v. *P. Ballantine & Sons,* 127 Conn. 680, 683, 20 A.2d 82. The defendant places great stress on the latter case.

The facts in it differed markedly from those here. The right of cancellation of the oral contract was given only to the buyer (plaintiff) and was "at will." Here, the right of cancellation could be exercised by either party, but only by giving written notice of cancellation. Restatement, Contracts § 79, comment b, illust. 1. Furthermore, during the life of the present contract, that is, prior to the exercise by either party of the privilege of cancellation, there were mutual obligations which existed under the terms of the contract. There were also the provisions as to the rights and duties of the parties after cancellation. Necessarily, these survived cancellation. There was sufficient consideration moving from each party to make the contract enforceable. An interesting annotation on the effect of the reservation of an absolute right to cancel on the validity of a contract so far as it is executory may be found in 137 A.L.R. 919, appended to a report of *R. F. Baker Co.* v. *P. Ballantine & Sons*, supra. The decision in that case does not support the defendant's contention that here there was no valid contract, as far as executory dealings were concerned, and that therefore the defendant could break the contract with impunity and without liability for future losses.

The defendant claims that the exercise of the power to cancel constituted a rescission and thus necessarily brought about a forfeiture of the right to recover damages for any antecedent breach. Cases on the effect of the exercise of a power of cancellation which has been expressly provided for in a contract on liability accruing before the exercise of the power are collected in 166 A.L.R. 391. The effect of the exercise of a cancellation provision in a sales agency contract is the subject of an an-

notation in 32 A.L.R. 209, 215, supplemented in 52 A.L.R. 546, 547, and 89 A.L.R. 252, 254.

It is true that if the parties to a contract mutually agree to its rescission, in the technical sense of the term, they have agreed to annul or blot out the contract and consequently can claim no rights under it and no damages for any breach. *Haaser* v. *A. C. Lehmann Co.*, 130 Conn. 219, 221, 33 A.2d 135. But even where the parties have employed the technical term "rescind" or "rescission," the term will not necessarily be given its technical meaning. The meaning to be accorded it depends on the fair interpretation of the acts and conduct of the parties. "From all the evidence before it the trier must determine what the intention [of the parties in the use of the word 'rescind' or 'rescission'] was. Intention is an inference of fact, and the conclusion [of the trier] is not reviewable unless it was one which the trier could not reasonably make." *Finlay* v. *Swirsky*, 98 Conn. 666, 671, 120 A. 561. Here, of course, the case is stronger for the plaintiff, since the term "cancel," rather than the term "rescind," was employed. Furthermore, this was not the termination of a contract by mutual agreement after partial performance. Such a termination might constitute a true rescission. Rather, this was the exercise by one party of the power to cancel which was expressly given to each party in the contract itself.

The cases referred to in the annotation in 166 A.L.R. 391 support the statement of the writer of the annotation (p. 392) that "when a contract . . . contains a provision or option giving the right or privilege of cancelation and the agreement is canceled in pursuance of the right [or] privilege thus given, such cancelation does not extinguish liabil-

ities that have already accrued under the contract
. . . regardless of whether the liability is that of
the party who exercised the option to cancel the
agreement or [as in the instant case] is the liability
of the party against whom cancelation is made." In
the instant case, to equate the cancellation of the
contract with a rescission of it in the technical sense
would be a wholly unreasonable interpretation, since
it would require a forfeiture of the right to damages
for any antecedent breach as a condition precedent
to the exercise of the power of cancellation, although
that power is expressly conferred, without any such
condition, in the contract itself. The court properly
rejected the defendant's claim of rescission and
treated the cancellation as amounting to a termina-
tion of the contract which left the parties in the
exact condition they were then in. *Finlay* v. *Swir-
sky,* supra, 670; *Haaser* v. *A. C. Lehmann Co.,*
supra; 5 Corbin, Contracts, p. 958. The cancella-
tion did not preclude or diminish any right to re-
cover damages for injuries proximately resulting
from the admitted antecedent breach. *Factory
Realty Corporation* v. *Corbin-Holmes Shoe Co.,* 312
Mass. 325, 329, 44 N.E.2d 671; 5 Corbin, op. cit.
§ 1236.

Loss of prospective profits proximately caused
by the breach, was, if proven, a proper element of
damage. *Kay Petroleum Corporation* v. *Piergrossi,*
137 Conn. 620, 624, 79 A.2d 829, and cases cited.
The court properly concluded that the plaintiff
had proven a loss of profits, to the extent allowed
in the judgment, with the certainty which the law
requires. See id. This allowance was made only
for the period of one year immediately following
the breach, and we cannot say the allowance was not
warranted under our rule. The defendant com-

plains about the lack of mathematical precision in the plaintiff's evidence of damages. This claim amounts to little more than a repetition of one which was made on the first trial. *Stern & Co.* v. *International Harvester Co.*, 146 Conn. 42, 46, 147 A.2d 490. There was no error in the assessment of damages.

The defendant, in special defenses, stated that the plaintiff, in negotiations for the settling of its account with the defendant after the cancellation, failed to make any claim for damages for the breach of contract and thereby waived them. Waiver is the intentional relinquishment of a known right. *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 194, 148 A.2d 554. The court was not required to conclude that the defendant had proven any waiver. The defendant also claims that the plaintiff, for the same reason, is estopped to claim any damages. It is true that the defense of estoppel need not be pleaded. *DelVecchio* v. *DelVecchio,* supra, 195. But here there is nothing to require the court to find that the defendant in any way changed its position to its injury or prejudice as a result of the failure of the plaintiff to assert its claim for damages more promptly. See id.

The defendant claimed error in the admission in evidence, in the course of an examination of the accountant who had prepared it, of a plaintiff's exhibit which contained a computation of the plaintiff's loss of prospective profits resulting from the defendant's breach of contract. The exhibit was an effort on the plaintiff's part to surmount a rather difficult problem of proof. While the plaintiff could recover damages for losses resulting from the defendant's breach, it could not recover damages for losses resulting from its own act of cancellation.

The court committed no error in admitting the exhibit. See cases such as *State* v. *Hayes,* 127 Conn. 543, 601, 18 A.2d 895.

The defendant objected to testimony by the witnesses Charles A. Delia and Arthur DeBiasi that it was the custom of the trade to give notice before a change of distributorship, as was required in the contract here. The court was fully warranted in concluding that the parties knew or ought to have known of a business usage corresponding to a particular provision inserted in their contract. *Sottosanto* v. *Lucas,* 108 Conn. 521, 523, 143 A. 902. The evidence of trade usage was material, if not essential, to the plaintiff's case, because it helped to explain why and how the defendant's breach could be a proximate cause of any damage at all. It was largely because of this custom of the trade that the failure of the defendant to notify the plaintiff of the change of territory, so that it could inform its customers before the change became effective, created confusion and doubt in the minds of the customers and thereby adversely affected the plaintiff's business prestige and caused it a loss of profits, as alleged in the complaint.

The other claims of error, including one that the court in fact treated the case as a hearing in damages after admitted liability, in disregard of all defenses, are not well founded and require no discussion.

There is no error.

In this opinion the other judges concurred.