EATON FACTORS COMPANY, INC. *v.* GEORGE M. BARTLETT

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 7-613-407

Argued May 4—decided July 31, 1962

*George R. Tiernan,* of New Haven, for the appellant (defendant).

*Bayard R. Brick, Jr.,* of Hartford, for the appellee (plaintiff).

GEORGE, J. On October 14, 1960, the Boro-Heat Sealed Plastics, Inc., hereinafter referred to as Boro-Heat, entered into a contract with the defendant whereby, in consideration of his paying $252, Boro-Heat was to furnish him with advertising space for an advertisement of the Wey-Rite Company upon a plastic telephone-book cover to be mailed to 1200 physicians in the New Haven area. The parties entered into a similar contract for the same advertisement to go to 1200 Fairfield County physicians. Each contract provided for the payment of attorneys' fees of 15 percent of the unpaid balance in the event the contract was placed with an attorney for collection.

About three weeks after the signing of the contracts, the defendant ceased to represent Wey-Rite Company. Prior to January 3, 1961, Boro-Heat mailed to the defendant a rough-proof copy of his advertisement for approval. Another request for approval of a proof copy was mailed to the defendant on January 3, 1961. On January 9, 1961, the defendant wrote Boro-Heat that he no longer handled Wey-Rite products and requested it to seek a replacement advertisement. On January 14, 1961,

Boro-Heat sent a letter to the defendant acknowledging his letter of January 9, 1961, and his request to cancel the contract, and informing him that it had already incurred certain expenses, no longer had a salesman in the area, and was forced to "consummate" the contract. On February 8 and 9, 1961, Boro-Heat mailed out the telephone covers. The contracts were then assigned to the plaintiff.

From a judgment in favor of the plaintiff the defendant has appealed, claiming that the agreements entered into by him and Boro-Heat were not binding contracts because of the provision giving Boro-Heat the privilege of canceling prior to publication; that Boro-Heat never exercised its right to cancel, but published and distributed the telephone-book cover one month after receiving the defendant's letter of cancelation; that there was an unreasonable delay, a period of almost four months, between the signing of the agreement and performance; that Boro-Heat was under a duty, after receiving defendant's notice to cancel, to mitigate the damages, not enhance them; and that if the plaintiff was entitled to any damages, they would be less than the contract price.

The contracts are in the form of letters from the defendant to Boro-Heat requesting it to reserve a space for an advertisement of the defendant. One of the sentences is as follows: "It is understood that you [Boro-Heat] reserve the right to cancel this contract at any time before publication . . . ." This is the basis of the claim that the contracts are void for want of mutuality. The defendant's promise appears to be unconditional, and his objection is that the promise of Boro-Heat is conditional, it having reserved the right to cancel the contracts at will. The objection is well taken, because to agree to do something and to reserve the right to cancel the agreement at will is no agreement at all. *Ellis* v.

*Dodge Bros.*, 237 Fed. 860, 867 (N.D. Ga.); *R. F. Baker Co.* v. *P. Ballantine & Sons*, 127 Conn. 680, 683; *Gurfein* v. *Werbelovsky*, 97 Conn. 703, 705. Where a bilateral agreement contains a reservation to cancel at will by one party, the test is whether the party not having the option to cancel could at any time, no matter for how short a period of time, enforce the contract. *Gurfein* v. *Werbelovsky*, supra. The defendant never had an opportunity to enforce either of these contracts. Therefore it must be concluded that the writings sued upon were insufficient bilateral agreements, there being no promise for a promise.

An insufficient bilateral agreement may ripen into a valid unilateral contract by the performance of one of the parties. 1 Williston, Contracts (3d Ed.) § 106. There was sufficient performance by the plaintiff's assignor prior to notice of cancelation to make the contracts become operative. Unilateral contracts need be supported by consideration only on one side. 1 Williston, op. cit.

Another claim presented by the defendant was that the contracts were nullified by the unreasonable delay, a period of four months, between the signing of the contracts and the performance. The writings did not specify a time for performance, nor did they state that time was of the essence. "If no time is fixed in the offer within which acceptance must be made, it is a rule of law that acceptance must be within a reasonable time." 1 Williston, op. cit. § 54. To determine what is a reasonable time, we must look to the act requested. And generally, in offers for unilateral contracts, a reasonable time for accepting the offer is necessarily a reasonable time for doing the act requested; if the act from its nature is likely to take a considerable time, the offer will remain open for that length of time. 1 Williston, op. cit., p. 175. When the defendant signed the con-

tracts, he knew that there were to be other advertisements on the covers. Also, there was no evidence that the defendant was the last subscriber, nor that publication and distribution were to be in the immediate future. It is our opinion that in this set of circumstances the offer was accepted within a reasonable period of time.

Once having received notice of the defendant's request to cancel, Boro-Heat was obligated to minimize the damages, not enhance them by proceeding to publish and distribute the telephone-book covers. Restatement, 1 Contracts §§ 336-338. However, it is not clear in the present case what Boro-Heat could do to minimize the damages other than to sell the space to another advertiser. Its salesman had already left the area, and this product was to be distributed to special groups. It had contracts with other advertisers on the same covers and had to publish and distribute the covers in compliance with the agreements. The plaintiff's damages are the expenses incurred by Boro-Heat prior to the defendant's cancelation, plus the expenses which it could not avoid incurring thereafter, and the loss of profits, if it was unable to replace the advertisement. It may well be that such damages may equal the contract price. However, since there was no evidence of damages presented during the trial, we cannot concern ourselves with this question.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover such damages as it may prove on a new trial limited to the issue of damages.

In this opinion JACOBS and KINMONTH, Js., concurred.