566 P.2d 1332

Lemuel C. SHATTUCK, Jr., a married man, in his sole and separate right, Appellant,

v.

PRECISION–TOYOTA, INC., an Arizona Corporation, Appellee.

No. 12841.

Supreme Court of Arizona, In Banc.

July 11, 1977.

Robertson, Molloy, Fickett & Jones, by Donald J. Oppenheim, Myles C. Stewart, Tucson, for appellant.

Gerald B. Hirsch, Tucson, for appellee.

STRUCKMEYER, Vice Chief Justice.

Appellant, Lemuel Shattuck, brought this action against Precision-Toyota, Inc. for breach of a noncompetition agreement. The case was tried without a jury and at the close of Shattuck's case the trial judge entered a verdict and judgment in favor of appellee, Precision-Toyota. Judgment of the Superior Court reversed with directions that appellant Shattuck be granted a new trial.

In 1972, Shattuck had been in the business of selling used cars in Tucson, Arizona for fourteen years. He leased a lot on East Speedway on a month-to-month basis. Precision-Toyota was a new and used car retail distributor directly across the street from Shattuck. In early May, 1972, appellee, through its president, Jack Rowe, contacted Shattuck about subleasing Shattuck's business premises. After negotiations and at Precision-Toyota's instigation, a five-year lease was obtained by Shattuck. The then parties signed two documents, a sublease and a noncompetition agreement. The sublease provided that Precision-Toyota would lease Shattuck's premises for three years at a rental of $775.00 per month, renewable for two additional years at its option.

The noncompetition agreement provided in its pertinent part:

"Now for good and valuable consideration * * * it is agreed as follows:

1. Precision promises to pay to Shattuck the sum of SIXTY THOUSAND DOLLARS ($60,000.00) payable as follows: $1,000.00 on or before the 20th day of June, 1972, and $1,000.00 on or before the 20th day of each month thereafter until the entire sum is paid. In the event Precision does not exercise their option to extend the sub-lease, Exhibit A, for an additional two years, then and in that event, Precision shall have complied with this agreement upon the payment of a total of THIRTY–SIX THOUSAND DOLLARS ($36,000.00) rather than the $60,000.00 referred to above. In the event Precision remains in possession of the property, the $1,000.00 monthly payment shall continue until the full sum is paid.

2. Shattuck in consideration of the payments he receives pursuant to this agreement, *so long as he receives these payments* will not compete with Precision in the sale of new recreational vehicles in the geographical area located west of Alvernon Way, east of Jones Blvd., south of Pima Street, and north of Fifth Street, all in Tucson, Pima County, Arizona." (Emphasis added.)

The sublease and noncompetition agreement were signed on June 9, 1972. On February 4, 1974, Precision-Toyota notified Shattuck that effective March 1, 1974, it would no longer make the $1,000.00 per month payments as called for under the noncompetition agreement but would continue the $775.00 per month payments on the sublease. It then terminated the $1,000.00 payments and this suit for damages was brought.

The trial judge believed that paragraph two of the noncompetition agreement set up a durational restriction. He based his conclusion on the language "so long as he receives these payments will not compete with Precision." Precision-Toyota's position is that the trial court correctly interpreted paragraph two to mean that it had a right to discontinue the payments and that the only consequence was that Shattuck was released from the restriction on competition. This interpretation is plainly in error.

■ It is a general rule that the construction of a contract is a question for the court when its terms are plain and unambiguous on its face. *Ridara Livestock Co. v. Agricultural Products Co.*, 61 Ariz. 473, 475, 150 P.2d 761 (1944).

"Where parties bind themselves by a lawful contract, in the absence of fraud a court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive. [citation] The intent of the parties, as ascertained by the language used, must control the interpretation of the contract. It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement. Its duty is confined to the construction or interpretation of the one which the parties have made for themselves. [citation] Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Goodman v. Newzona Investment Co.*, 101 Ariz. 470, 472, 421 P.2d 318, 320 (1966).

■ The trial court's interpretation of the noncompetition agreement is erroneous for two reasons. First, and most important, the agreement is unambiguous. The sublease and noncompetition agreement when read together are consistent. They clearly set forth the rights and duties of the parties. The sublease calls for monthly rental payments of $775.00 and the noncompetition agreement calls for $1,000.00 per month for a minimum of three years in return for Shattuck's withdrawal from competition in an area in Tucson. Such being the case, the contract must be given effect as written.

■ Second, the trial court's interpretation makes the promises made by Precision-Toyota illusory. It is hornbook that an illusory contract is unenforceable for lack of mutuality.

"Parties are, within reason, free to contract as they please, and to make bargains which place one party at a disadvantage; but a contract must have mutuality of obligation, and an agreement which permits one party to withdraw at his pleasure is void." *Naify v. Pacific Indemnity Co.*, 11 Cal.2d 5, 11, 76 P.2d 663, 667 (1938).

A Connecticut court put it this way:

"The defendant's promise appears to be unconditional, and his objection is that the promise of Boro-Heat is conditional, it having reserved the right to cancel the contracts at will. The objection is well taken, because to agree to do something and to reserve the right to cancel the agreement at will is no agreement at all. *Ellis v. Dodge Bros.*, 237 F. 860, 867 (N.D. Ga.); *R. F. Baker Co. v. P. Ballantine & Sons*, 127 Conn. 680, 683, 20 A.2d 82, 137 A.L.R. 916; *Gurfein v. Werbelovsky*, 97

Conn. 703, 705, 118 A. 32. Where a bilateral agreement contains a reservation to cancel at will by one party, the test is whether the party not having the option to cancel could at any time, no matter for how short a period of time, enforce the contract. *Gurfein v. Werbelovsky, supra.* The defendant never had an opportunity to enforce either of these contracts. Therefore it must be concluded that the writings sued upon were insufficient bilateral agreements, there being no promise for a promise." *Eaton Factors Company, Inc. v. Bartlett*, 24 Conn.Sup. 40, 42–43, 186 A.2d 166, 168 (1962).

It is a long-standing policy of the law to interpret a contract whenever reasonable and possible in such a way as to uphold the contract. *Hall v. Rankin*, 22 Ariz. 13, 15, 193 P. 756 (1920). A more reasonable interpretation of the noncompetition agreement and one which avoids making the agreement void is that paragraph two is simply a specification of Shattuck's obligation under the agreement. It plainly says that as long as Shattuck receives the payments specified in the agreement he will not compete with Precision-Toyota in the sale of new recreational vehicles. This language of paragraph two is essential, since by the option in paragraph one the term of the agreement could be extended from 36 to 60 months.

The judgment of the Superior Court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.