Gardner, J.
On December 17,2003, plaintiff-buyer John C. Dotson (“Dotson”) contracted with defendant-sellers Robert E. Cogswell (“Cogswell”) and Lloyd E. Shelton (“Shelton”), d/b/a S.C. Construction Company (“S.C. Construction”), for the purchase and sale of land in Barre and for the construction of a house to be built by the defendants on that site. Building specifications attached to the agreement called for, among other things, the defendants to “[pjower rake existing loam” and “[djisturbed areas to be hayed and seeded.” By the closing on January 12, 2004, such landscaping had not been completed. As a result, at the closing, the parties executed an escrow hold-back agreement, which provided:
[T]he parties ... acknowledge that the Seller has not obtained and provided (or completed/repaired) the... Landscaping as per the Purchase and Sale Agreement dated December 17, 2003 signed by both parties hereinafter referred to as the Holdback Purpose....
The parties shall consummate the above stated transaction [i.e., closing], however, [sic] Harry P. Kotseas, Esquire, hereinafter referred to as Escrow Agent, shall hold $3,000.00, hereinafter referred to as the Holdback Funds, of the Seller’s proceeds from the sale in a non-interest bearing escrow account pending completion of the Holdback Purpose on or before June 1, 2004.
In the event satisfactory evidence of the completion of the Holdback Purpose is disputed or not presented as required herein, the Escrow Agent shall, at his/her option be entitled to apply all or part of the Holdback Funds towards any costs and/or legal fees expended on his/her part due to the dispute or to complete the Holdback Purpose including payment of all or part of the funds to the Buyer to enable the Buyer to pay for a third party to complete the Holdback Purpose; and the Seller further agrees that he/she shall be liable to the Escrow Agent and/or the Buyer for any addi *18 tional costs and/or legal fees he/she incurs in completing the Holdback Purpose above the amount of the Holdback Funds....
By June 1,2004, the defendants had not power raked the existing loam, or seeded and hayed the disturbed areas. Dotson sent a G.L.c. 93A demand letter to the defendants dated June 29, 2004. The defendants’ attorney responded on July 12, 2004, offering that his clients would finish the landscaping, weather permitting, the week of July 19, 2004. Following a heated exchange with Cogswell at the property on July 19, 2004, Dotson informed the defendants that he would turn the matter over to his attorney.
On September 30, 2004, Dotson filed a complaint against Cogswell, Shelton, and S.C. Construction alleging breach of contract and violations of G.L.c. 93A. Dotson later amended his complaint, adding two more defendants[2] and a claim for fraudulent conveyance. Before trial, the court dismissed the fraudulent conveyance claim. After a jury-waived trial, the court allowed all of the defendants’ requests for rulings of law, determined that there had been no violation of G.L.c. 93A, but found that Cogswell, Shelton, and S.C. Construction had breached the hold-back agreement. In a written decision, the trial judge explained that the defendants’ “failing to properly grade the property, failing to complete the grading of the property and failing to power rake, seed and hay the property ... caused the pooling of water in the backyard.” The trial judge concluded that “the cost to properly regrade the property, provide proper drainage to alleviate the water problem resulting from the improper grading and seed the property is $35,200.”
On June 26, 2007, judgment was entered for Dotson in the amount of $35,200.00, plus interest and costs. The defendants thereafter filed a motion to alter or amend the judgment, or for a new trial, on the issue of damages, which the trial court denied. Only Cogswell has appealed.
1. As Cogswell failed to preserve any issue as to the sufficiency of the evidence, our review is limited to whether the trial court’s findings of fact were clearly erroneous.[3] A finding is “clearly erroneous” when “although there is evidence to support *19 it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 792 (1986), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). “On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts.” Kendall v. Selvaggio, 413 Mass. 619, 621 (1992).
Cogswell advances two arguments against the finding that he breached the hold-back agreement. He first contends that he had no contractual obligation to grade the areas of the property that had been disturbed during construction. We disagree. The terms of the hold-back agreement required the defendants to finish the “[l]andscaping as per the Purchase and Sale Agreement,” which, in turn, required them to “[p]ower rake existing loam” and that “[d]isturbed areas be hayed and seeded.” It may be reasonably inferred from this language, together with the purchase and sale agreement provision that the “premises shall be completed in a good and workmanlike manner,” that disturbed soil, which the record discloses had been piled, would be first spread and graded, then raked, seeded, and hayed. Further, even if we were to assume an ambiguity, the trial testimony unequivocally supports the court’s determination that grading was contractually required.[4] See Trafton v. Custeau, 338 Mass. 305, 307-308 (1959) (‘Where the terms of a written contract are ambiguous, both parties may testify as to what they understood by the terms of the contract when they executed it. The [fact finder] will then determine what were its terms and apply the law to such facts as [the fact finder] find[s] comprised its terms.”).
Cogswell also argues, unpersuasively, that even if the defendants were required to grade the property under the hold-back agreement, Dotson prevented their performance of that contractual obligation by the June 1,2004 deadline. Cogswell relies on the proposition that “one whose conduct has brought on the conditions assigned as a breach of contract cannot take advantage of it.” Ravage v. Johnson, 316 Mass. 558, 562 (1944). Specifically, Cogswell testified that he had informed Dotson in late May, 2004 that “it looked like we were still on track for mid-June to put the yard in ... because up to that point in time, it was still wet, too wet, to get in there and work the newly-applied dirt and fill in the yard.” He emphasizes on appeal that, by not objecting, Dotson led Cogswell to believe that he could finish the landscaping when the weather had dried.
“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997), quoting Anderson v. Bessemer, 470 U.S. 564, 574 *20 (1985). The trial court in this case explicitly found that “[t]here was testimony from Cogswell that the parties had an oral agreement that the landscaping would be done after June 1st due to weather conditions but I find that the plaintiff did not agree to this modification.” This finding was supported by the absence in the record of any testimony by Dotson that he agreed to extend the deadline beyond June 1, 2004, together with his testimony that he fully expected the landscaping to be completed by June 1.
2. Cogswell challenges the trial court’s award of $35,200.00 in damages for breach of contract on the ground that the hold-back agreement provided for liquidated damages in the amount of $3,000.00 to cure any breach by the defendants. “Liquidated damages is a sum fixed as an estimate made by the parties at the time when the contract is entered into of the extent of the injury which a breach of the contract will cause.” Quegan v. Bonner, 1997 Mass. App. Div. 105, 106, citing Factory Realty Corp. v. Corbin-Holmes Shoe Co., 312 Mass. 325, 331 (1942). Whether a contract term is a liquidated damages clause is a question of law for the court. See McMann v. McGowan, 71 Mass. App. Ct. 513, 516 (2008). In this case, rather than fixing $3,000.00 as compensation for the defendants’ failure to finish the landscaping, the hold-back agreement provides that “the Seller further agrees that he/she shall be liable to the Escrow Agent and/or the Buyer for any additional costs and/or legal fees he/she incurs in completing the Holdback Purpose above the amount of the Holdback Funds.”
Cogswell’s argument that the damages award was unreasonable because of Dotson’s failure to mitigate damages is also without merit. “[A] party cannot recover damages for loss that he could have avoided by [such] reasonable efforts... as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise.” Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 612 (2007), quoting Restatement (Second) of Contracts §350(1) comment b (1981). Cogswell, to satisfy that burden, id,., points to his expert’s testimony that Dotson’s admitted failure to have the property graded by alternative means following the breach in the summer of 2004 led to increased erosion by 2007. He argues that such erosion, alone, accounts for the difference between the $3,000.00 envisioned by the parties in 2004 to complete the landscaping and the $32,500.00 awarded by the court in 2007. We reject this argument, however, because it relies on Cogswell’s erroneous liquidated damages argument. There was also conflicting testimony from Dotson’s expert that there had been no significant erosion from 2004 to 2007.
3. Finally, we find no abuse of discretion in the trial court’s denial of Cogswell’s motion to alter or amend the judgment, or for a new trial, on the issue of damages given our conclusion that the court’s findings were not clearly erroneous. See Gregory v. Town of Oak Bluffs, 1996 Mass. App. Div. 44, 45, citing Kendall, supra.
Judgment affirmed.
So ordered.

 The Shelton Emporium Trust and L.C. Builders, Inc., which is also spelled “L.B. Builders, Inc.” in the record.

 Under the procedural rules applicable at the time of the adjudication of this case, issues of law in district court civil bench trials were properly raised in the trial court and preserved for appeal by the filing of Mass. R. Civ. P., Rule 64A requests for rulings of law. Cantarella Realty, Inc. v. Restorations, Inc., 2008 Mass. App. Div. 135, 136-137. Although the defendants filed 23 Rule 64A(a) requests for rulings that set forth general propositions of law, the trial court allowed all of these requests, “and there can be no appeal by the defendants of the allowance of their own requests.” Id. at 137. Further, the defendants failed to file either a Rule 64A(b) request testing the sufficiency of Dotson’s evidence, or a Mass. R. Civ. R, Rule 41(b) (2) motion for voluntary dismissal as to breach of contract at the close of Dotson’s case, and thus waived any consideration on appeal of the sufficiency of the evidence to support the court’s finding for Dotson on that claim. Ronan v. Donaroma’s Nursery & Landscape Servs., Inc., 2007 Mass. App. Div. 6. As a result, the scope of Cogswell’s appeal is necessarily restricted to consideration of whether the trial court’s findings of fact were clearly erroneous.

 Cogswell testified that at the time of the closing, he understood that the defendants had still to spread the topsoil, which had been “pulled... off prior to construction and piled... so that it would be out of the way while construction was going on.” He added that “there was some shaping that needed to be done in the back which would have been done at the time we would put the topsoil back down,” later defining shaping as “setting the grade from the house to where water would flow away... from the house so that there’s no pooling occurring around the foundation.”